D & J HATCHERY, INC., APPELLEE, v.
FEEDERS ELEVATOR, INC., APPELLANT.

274 N. W. 2d 138

Filed January 10, 1979. No. 41678.

John V. Addison, for appellant.

Neil R. McCluhan and Michael W. Ellwanger, for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is a suit upon a note brought by D & J Hatchery, Inc., appellee, against Feeders Elevator, Inc., appellant. The District Court for Wayne County, Nebraska, entered judgment for the balance found due against the appellant, who prosecutes this appeal. We affirm the judgment.

The record shows a series of transactions occurring between April 8, 1974, and November 22, 1974. During this period, D & J Hatchery, Inc., the appellee, hereinafter referred to as the hatchery, was a corporation, whose president was Dale E. Booth, hereinafter referred to as Booth; Feeders Elevator, Inc., the appellant, hereinafter referred to as the elevator, was a corporation, whose vice president and general manager was John A. Krause, hereinafter referred to as Krause, whose position and employment was terminated on June 8, 1974. On April 8, 1974, Krause told Booth that the elevator was in need of $45,000 to cover an overdraft and outstanding note, and requested a temporary loan for that amount. Booth agreed to make the loan and thereupon issued his personal check payable to Krause; in exchange, Krause drew a corporate check on the elevator and gave it to Booth, stating that funds

would be available to meet it when the check was presented for payment. Krause deposited the Booth check in the elevator account, said check being paid upon presentment. When the elevator check arrived from Booth's bank, the elevator did not have sufficient funds upon deposit to meet it. Thereupon, stockholders of the elevator, who were sureties for the elevator account, were notified that the check had been presented. They testified they informed the bank that the signature was not authorized and directed the bank to return the check unpaid. The bank did return the check unpaid, with a notation there were insufficient funds for the payment of the check. Neither the elevator nor its officers or stockholders communicated in any way with the hatchery or with Booth, either to inquire about the transaction or to disavow Krause' actions. The record does not show what, if any, entries were made upon the elevator books in connection with the transaction.

After the elevator check was presented for payment a second time and remained unpaid, the hatchery sent its field manager, Harold Sankey, to confer with Krause on April 26, 1974. Krause executed and delivered the note in suit on behalf of the elevator, promising to pay the sum of $45,000 upon demand; at the same time, they made an oral agreement that the elevator should pay the note by delivering feed at market prices to the hatchery. Furthermore, they executed a written market egg agreement by which the hatchery agreed to lease 20,200 egg-laying chicks to the elevator and the elevator agreed to provide care for the chicks and to sell the eggs produced at the hatchery at prices scheduled therein. The elevator accepted delivery of the chicks and detailed an employee to care for the chicks and to gather the eggs. The agreement was finally abandoned after the death of a large number of chicks. Krause' authority to bind the elevator on the market

egg agreement was never questioned nor was his action disavowed.

Krause had been engaged in commodity speculations using the credits and accounts of the elevator. The auditor for the elevator testified that during the period subsequent to July 1, 1973, the shortage in the accounts of Krause to the elevator amounted to $88,009, and when he inquired of the president of the elevator how the $45,000 credit item for the Booth check should be treated, the president told him to show it as a payment from Krause for credit upon the above account. This instruction is not shown to be based upon any book entry nor upon any statement either from Booth or Krause.

The evidence refers to the delivery of three shipments of feed to the elevator, charged as follows:

| June 1, 1974 | $ 8,021.94 |
|---|---|
| July 1, 1974 | 5,827.38 |
| August 1, 1974 | 3,509.50 |
| | $17,358.82. |

The details of the shipments as to the ordering thereof, the prices charged, and the book entries thereof do not appear in the evidence. At least one or two of the shipments were made after Krause' employment was terminated on June 8, 1974. In November 1974, the hatchery made a written demand upon the elevator for the payment of the balance due upon the note after the application of the three credit items. The elevator made no response. The hatchery then filed suit, alleging both the making of the check and the note, giving credit for the amounts of feed received and praying judgment for the balance. The answer of the elevator contained a general denial and allegations that Krause lacked authority to bind the elevator, that there was no consideration for the note, and that the exchange of checks was a kiting transaction. It filed a cross-petition for recovery of the amounts charged for the feed and also for the sums due to it upon the market egg agreement. The

hatchery replied denying the allegations in the answer, realleging credit for the cost of the feed, denying any amount due upon the market egg agreement, and further counterclaiming for damages resulting from the negligence of the elevator in caring for the chicks. The elevator denied the allegations of negligence against it.

After trial to the court, a jury being waived, a judgment was rendered for the amount due the hatchery upon the note after the credits were applied for the feed shipments and for the amount found due the elevator upon the market egg agreement. Judgment was rendered for the elevator upon the counterclaim for negligence. No appeal was taken from the findings and judgment upon the market egg agreement.

The elevator assigns as error the following: (1) Finding the elevator liable upon the note; (2) finding that Krause had authority to execute the note; (3) the amount of recovery; (4) speculation by the court shown by its memorandum letter of July 19, 1977; and (5) finding that Krause had implied authority to execute the note.

Assignment of error (3) is not supported by any argument or citation of authority and is deemed waived. The elevator did not demand that the trial court make findings of fact and conclusions of law under section 25-1127, R. R. S. 1943. The letter of the court of July 19, 1977, is an informal expression of opinion by the court and is not subject to any assignment of error. The second and fifth assignments do not relate to any express findings made by the court. The general finding by the court does not depend upon a finding of express, implied, or apparent agency of Krause to represent the elevator, and such specific assignments of error are immaterial to this appeal. Our consideration of the case will, therefore, be in the light of the first assignment of error.

Appellant argues that the transaction between

Booth and Krause amounted to "kiting," and was therefore fraudulent. "Kiting" is a fraudulent misuse of credit obtained upon the deposit of false or fictitious paper during the time required for such paper to clear or to be presented for payment. In the instant case, the Booth check was valid and was paid upon presentation; there is no evidence that the elevator check made by Krause was the basis for the securing and use of any credit during the time it was clearing. Appellant's argument on this point is unfounded.

The basic question involved in this appeal is whether the elevator ratified the actions of Krause in the transactions relating to the check and the demand note. In Citizens Savings Trust Co. v. Independent Lumber Co., 104 Neb. 631, 178 N. W. 270, the general rule regarding ratification was stated as follows: "The unauthorized acts of an officer of a corporation may be ratified by the corporation by conduct implying approval and adoption of the act in question. Such ratification may be express, or may be inferred from silence and inaction, and if the corporation, after having full knowledge of the unauthorized act, does not disavow the agency and disaffirm the transaction within a reasonable time, it will be deemed to have ratified it."

In McCook Livestock Exchange Co. v. State, 173 Neb. 766, 115 N. W. 2d 147, after one corporate officer accepted an overpayment in ignorance of the true facts and other corporate officers, with knowledge of the facts, did not disaffirm the transaction and return the benefits thus obtained, it was held that the corporation had ratified the acceptance of the overpayment with all attendant consequences. Furthermore, in Drainage Dist. No. 2 v. Dawson County Irrigation Co., 140 Neb. 866, 2 N. W. 2d 321, when an officer executed an unauthorized contract and made a payment upon it with corporate funds, the failure of the board of directors to disaffirm the transaction

within a reasonable time after receiving notice thereof was held to constitute a ratification. The evidence in this case shows Krause acted in behalf and in the name of the elevator, the deposit of the benefits obtained to the credit of the elevator, there was knowledge by the remaining corporate officers of facts sufficient to put them upon notice of such matters, the delivery of feed shipments constituted apparent part payment, and there was a total failure to disavow and disaffirm Krause' acts and commitments or to return the benefits received during the lapse of considerably more than a reasonable time. We find, therefore, the elevator had ratified Krause' acts and commitments entirely. It has thus made itself liable upon the note in suit and the judgment of the trial court in favor of the hatchery is correct.

AFFIRMED.