JOSEPH D. SMITH, APPELLEE, V. JANET K. SMITH, APPELLANT.
386 N.W.2d 873

Filed May 16, 1986.   No. 85-604.

Richard M. Black, for appellant.

Albert L. Feldman of Harris, Feldman Law Offices, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

SHANAHAN, J.

Janet K. Smith appeals an order of the separate juvenile court of Douglas County denying Janet's request for an attorney fee and requiring Janet to pay part of a guardian ad litem fee and, also, granting her former husband, Joseph, biweekly supervised visitation with Smiths' child.

On May 17, 1984, the district court for Douglas County entered a decree dissolving the marriage of Joseph and Janet. The decree granted Janet custody of their child, Jerry, age 11 years, and visitation rights to Joseph on the condition that Joseph and Jerry undergo psychiatric treatment. The dissolution decree also ordered Joseph to pay $200 a month as child support, $150 per month as alimony, and $500 as attorney fees. As part of Smiths' property division, Janet received the parties' marital dwelling, an equal share in a $63,000 joint bank

account, and various items of personal property. Joseph is an employee of the state Department of Roads and earns approximately $20,000 a year. Janet delivers phone books, which accounts for a yearly income of $3,000.

After the decree was entered Janet "actively discourage[d]" Jerry from visiting with his father, thus preventing Joseph from exercising his decreed right of visitation. On September 20, 1984, the district court, on its own motion, appointed a guardian ad litem for Jerry. Joseph subsequently sought enforcement of the decree, and, on December 24, 1984, the district court entered an order requiring Janet to "cooperate in providing [Joseph] reasonable visitation with [Jerry]." As a result of continuing problems with visitation, the guardian ad litem, on January 22, 1985, filed a motion to transfer the case to the Douglas County Separate Juvenile Court, which motion was granted by the district court. See Neb. Rev. Stat. § 43-2,113 (Reissue 1984) (district court may, "with the consent of the juvenile judge," transfer matters "arising under the provisions of Chapter 42, article 3, when the care, support, custody, or control of minor children under the age of eighteen years is involved").

On March 15, 1985, the juvenile court heard arguments regarding Joseph's alleged failure to pay the previously decreed alimony and attorney fee and Janet's failure to cooperate in Joseph's visitation of Jerry and to deliver personal property awarded to Joseph. Joseph and Janet also bickered over payment of the guardian ad litem fee and Janet's request that Joseph pay an additional attorney fee. During proceedings before the juvenile court, Janet testified Joseph had beaten Jerry on numerous occasions and that Jerry was, as a result, afraid of being near his father. The guardian ad litem, however, noted only one incident where the father had allegedly struck the boy, and testified:

> Well, your Honor, from all the conversations I have had with people related to Jerry, it is also my opinion that he is probably too scared to visit with his father right now and I believe that is through no fault of the father. That is from all the research that I have done. I see nothing in the father's behavior that justifies this fear and it's my

considered opinion from all the talking that I have done to all of the various people involved that this fear of the father comes from his mother because she is afraid of him and she conveys that fear to Jerry and he has learned that fear from her.

In a separate report the guardian ad litem noted that Joseph was "very sad at the loss of communication with his son." The juvenile court also obtained services of a psychiatrist to examine Jerry and make recommendations regarding visitation. The psychiatrist observed that Jerry was "afraid of his father" and did not want "any visitation," and recommended that, if instituted, visitation should "be for a short period in a neutral environment under supervision." The juvenile court never interviewed Jerry or received testimony from Jerry regarding his desire to visit his father.

On July 9, 1985, the juvenile court ordered payment of a guardian ad litem fee of $840, requiring Janet to pay $240 of that fee; denied Janet's request for an additional attorney fee; and granted Joseph visitation of Jerry every other Sunday from 10:30 a.m. to 12 noon at the Hanscom Park United Methodist Church, under the supervision of two adults.

Janet first claims the juvenile court erred in ordering her to pay $240 of the guardian ad litem fee and in denying Janet's request for an additional attorney fee.

Initially, awarding an attorney fee in matters pertaining to marital dissolution is discretionary with a trial court and may depend on a variety of factors, including the amount of property divided and alimony granted, earning capacity of the parties, and general equities of each situation. See *Brown v. Brown*, 199 Neb. 394, 259 N.W.2d 24 (1977). "[T]he awarding of attorney fees in marriage dissolution cases [is a matter] initially entrusted to the sound discretion of the trial judge, which [matter], on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion." *Guggenmos v. Guggenmos*, 218 Neb. 746, 748-49, 359 N.W.2d 87, 90 (1984). The allowance, amount, and allocation of a guardian ad litem fee is also a matter within the initial discretion of a trial court, involves consideration of the equities and circumstances of each particular case, and will not

be set aside on appeal in the absence of an abuse of discretion by the trial court. See, *Nye v. Nye*, 213 Neb. 364, 329 N.W.2d 346 (1983); *Copple v. Bowlin*, 172 Neb. 467, 110 N.W.2d 117 (1961); cf. *Guggenmos v. Guggenmos, supra.*

Viewing the equities in this case, we note that, notwithstanding disparity in the parties' earning capacity, Janet received a suitable property division under the decree and was granted alimony and child support. Services of the guardian ad litem and additional services by Janet's attorney were prompted, to a great extent, by Janet's own conduct in disrupting Joseph's visitation. Under the circumstances of this case, the juvenile court did not abuse its discretion in denying Janet's claim for an additional attorney fee and by requiring Janet to pay a portion of the guardian ad litem fee.

Janet also claims evidence does not show the ordered visitation is in the best interests of Jerry. Specifically, Janet maintains that, as a result of Jerry's fear of his father, any visitation with his father is detrimental to Jerry's well-being.

In *Koch v. Koch*, 219 Neb. 195, 196-97, 361 N.W.2d 548, 549 (1985), this court recently enunciated the rule governing visitation rights of a parent:

> In cases involving determination of visitation privileges of a parent with minor children, findings of a trial court, both as to the evaluation of the evidence and as to the matter of visitation privileges, will not be disturbed on appeal unless there is an abuse of discretion or the findings are contrary to the evidence. Such findings are subject to review by this court de novo on the record. [Citations omitted.]

> The right of access to one's children should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child. In the absence of extraordinary circumstances, a parent should not be denied the right of visitation.

In *Koch* the minor children were in the custody of their mother and expressed a hostility toward their father. The father, moreover, was "guilty of some bad behavior in the presence of the children." *Koch, supra* at 198, 361 N.W.2d at 550. Nevertheless, we affirmed the district court's order affording

the father unsupervised visitation on every weekend.

The record in this case establishes that Jerry fears his father and does not wish to participate in the visitation ordered. The record also supports a finding, however, that Jerry's fear of his father is caused primarily by Janet's behavior, not by wrongful conduct on the part of Joseph. The court's order of supervised visitation was within the guidelines recommended by the psychiatrist's report. In the light of *Koch v. Koch, supra,* which sets forth a strong presumption in favor of visitation, we cannot conclude that the juvenile court abused its discretion in affording Joseph an hour and a half every other week for supervised visitation of Jerry.

Finally, Janet claims that the juvenile court erred in not taking testimony from or interviewing Jerry. Although Janet maintains that the trial court failed to directly verify Jerry's concerns regarding visitation with his father, it is clear that the court, through the testimony of witnesses other than Jerry, was well aware of Jerry's feelings and fears regarding Joseph and reflected such concerns by significantly restricting Joseph's visitation. Although Neb. Rev. Stat. § 42-364(1)(b) (Reissue 1984) provides that a court "shall consider" the "desires and wishes of the children if of an age of comprehension" in determining custody and visitation, *Deacon v. Deacon,* 207 Neb. 193, 297 N.W.2d 757 (1980), such statute does not require that a court derive a minor child's wishes only from the child's testimony, as opposed to evidence from some source other than the child's testimony which adequately establishes the child's desire and wishes regarding custody and visitation.

The judgment of the juvenile court is affirmed.

AFFIRMED.

CAPORALE, J., not participating.