REVERSED AND REMANDED WITH<br>DIRECTIONS TO DISMISS.

LINDA L. RITZ, APPELLANT, V. RICHARD G. RITZ, APPELLEE.

429 N.W.2d 707

Filed September 23, 1988. No. 86-1044.

John O. Sennett, of Sennett & Roth, for appellant.

Vincent L. Dowding, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and BUCKLEY, D.J., and COLWELL, D.J., Retired.

GRANT, J.

Petitioner-appellant, Linda L. Ritz, and respondent-

appellee, Richard G. Ritz, were married in Tennessee on December 19, 1959. Petitioner sought dissolution of the marriage by petition filed in December 1985, in Sherman County, Nebraska. A decree of dissolution was entered, after trial, on August 29, 1986. The decree dissolved the marriage of the parties, awarded alimony, divided property, and awarded attorney fees to petitioner. After a motion for new trial was overruled, petitioner timely appealed to this court. In this court, petitioner assigns as error the division of the assets and liabilities of the parties and the amount of award of alimony to her. We affirm the decree of dissolution, but modify it in the particulars hereinafter stated.

The record shows that at the time of the marriage of the parties, petitioner was 18 years old and respondent was 25. At the time of the marriage, petitioner was a senior in high school. She did not graduate, but later obtained a GED certificate. Respondent graduated from high school.

Two children were born of the marriage, and both were emancipated at the time of the decree of dissolution. Both parties were in good health, and both worked throughout the marriage. At one time, respondent was a "certified welder" and worked for several years on pipeline construction in Texas. Petitioner has no specialized training other than on-the-job training as a secretary and bookkeeper.

Neither party had substantial assets at the time of the marriage. After working in Texas, the parties moved to Nebraska in 1962. The parties had purchased land in Nebraska beginning in 1961 and bought "the home place" in 1962 or 1963. In connection with these purchases, we note respondent's testimony that

> I bought the half section that I live on or the quarter and the quarter adjoining to the west, I bought them the last year that I was pipelining. I bought them in — well, in fact I bought them in '61. I've got some dates if I may use some dates. I'll give you some dates on it if you need it. I bought the home place in '63 — spring of '62.

The deeds to the lands in question are not before us, but we will treat such land purchases, and other operations, as the property and operations of the parties and not those of

respondent alone, at least up to the time of their separation in December 1985.

Respondent began working in a grain elevator when he returned to Nebraska, and also engaged in farming and other business. Respondent testified he bought the grain elevator at Ashton, Nebraska, in about 1967, and, at that time, "we had the fertilizer plant and the elevator, bought and sold grain, sold fertilizer, had applicators, you know, to spread it with. Also had a big amount — had this grinder/mixer delivery truck kind of an all around operation."

Respondent testified that he could not keep up under the pace, so he finally cut down on the farming, sold the grain elevator, and got into the operation of a sale barn, with others, in Loup City, Nebraska. The sale barn did not turn out to be a good investment and, at time of trial, was treated as being of no value.

Respondent testified that petitioner was engaged in all the enterprises and that petitioner did the books and helped do whatever needed to be done. In addition, petitioner bore and raised two children. At the time of their separation in December of 1985, respondent was employed at the sale barn in Loup City at a salary of $1,750 per month. In 1984, respondent earned $21,000 in wages from the sale barn, and petitioner earned $6,294 at the same place. In January 1986, petitioner had moved from the family home in Ashton, Nebraska, to Grand Island, Nebraska, where she was able to get a job at $3.35 per hour for 12 hours per week at a motel. She testified that if she had been offered the job of running the motel, she could not handle that because the job required 24-hour-a-day work.

After trial, the court's decree was entered. In the decree, petitioner was awarded certain personal property, consisting primarily of furniture, a 1971 Thunderbird automobile, and certain small bank accounts and insurance policies. Respondent was awarded certain furniture, guns, a 1983 Lincoln automobile, his checking and savings accounts, farm machinery and trucks, and livestock. Respondent was also awarded real property, totaling 2½ sections of land, and was ordered to "assume and pay" certain debts, totaling approximately $440,000. In addition, respondent was ordered

to pay petitioner $15,000 as part of the property settlement, plus $5,000 per year alimony for a period not to exceed 5 years or until the death or remarriage of petitioner.

In connection with the division of property, there is little controversy concerning valuations. At the trial in July 1986, the financial situation of the parties as of July 16, 1986, was set out in an exhibit, jointly offered by the parties. This exhibit reflected the valuations set by each of the parties on various segments of the property owned by the parties.

In the valuation attributed to the various items, we specifically note that we are not affected in our judgments herein by respondent's statement at page 10 of his brief, as follows:

> An examination of the Property Statement . . . shows that either the Petitioner's or the Respondent's value of each asset and liability has been highlighted. There are also some handwritten notes and values appearing on the Property Statement . . . . When the Property Statement was received into evidence, there were no highlighted values nor handwritten notes appearing on the exhibit. Therefore, it can be concluded that it was the trial judge who highlighted certain values and wrote notes on the exhibit. It can further be concluded that the highlighted and the handwritten values are those values that the trial court used as a basis for the property division.

We make no conclusions at all in the areas suggested by respondent. Had respondent desired the trial court to make specific findings, he could have requested such findings. Respondent's remarks in this area will be ignored. See, *D & J Hatchery, Inc. v. Feeders Elevator, Inc.*, 202 Neb. 69, 274 N.W.2d 138 (1979); *Chalupa v. Chalupa*, 220 Neb. 704, 371 N.W.2d 706 (1985).

The division of property and the awarding of alimony in marriage dissolution cases are matters initially entrusted to the discretion of the trial judge. On appeal, such matters will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. *Busekist v. Busekist*, 224 Neb. 510, 398 N.W.2d 722 (1987); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986). We have reviewed the record herein de novo, and we

conclude that the trial court abused its discretion in the property award and in the granting of alimony, and accordingly modify the judgment of the trial court.

In order to analyze the division of property, we will follow the method suggested by petitioner in valuing the property awarded to petitioner. We accept the higher valuation offered by the two parties as to that property. In valuing similar property awarded to respondent, we will generally accept the lower valuation offered by the parties.

We agree with the trial court's determination of the personal property items to be awarded to petitioner, as set out in the court's decree. We value that property at $28,075.

Respondent alleges in his brief that the assets awarded to him total $588,797.19. We do not accept that figure. We value the assets awarded to respondent, as follows:

| | |
|---|---|
| Household goods | $ 2,750 (set out above) |
| Cash in accounts | 2,900 (agreed) |
| 1983 Lincoln | 13,700 (set by respondent) |
| Pickup, stock trailer, tractor, misc. | 19,250 (agreed) |
| Farm machinery | 69,050 (agreed) |
| 3 horses | 750 (agreed) |
| Government payments | 5,900 |
| Livestock | |
|   65 cows with calves | 34,125 |
|   300 steers | 124,800 |
|   60 heifers | 20,520 |
| Elevator contract | 27,500 (agreed) |
| Insurance policies and IRA | 14,867 (agreed) |
| Real estate | 295,030 (agreed) |
| | $631,142 |

With regard to the only items disputed in the foregoing list, first, as to the government payments, respondent testified he had received such amount and indeed had the checks on his person at the time of trial. Such amount should be treated as cash in respondent's hands.

The only other figure that needs explanation is the amount for livestock. In exhibit 1, submitted jointly at the time of trial, the livestock had an agreed valuation of $144,387. At trial, it

was stipulated by counsel that that value was the value as of February or March of 1986 and that it was not the value as of the date of trial. Respondent testified that at the time of trial the parties owned 65 cows with calves, rather than the 70 cows owned in the early spring. Petitioner testified the value was $450 to $600 per pair. We adopt a valuation of $525 per pair and therefore find the value of the cows with calves at $34,125.

Respondent testified the parties owned 300 steers. At trial, respondent testified the steers averaged 650 pounds and had a value of $64 per hundredweight. The steers, therefore, had a value of $124,800 at time of trial.

With regard to the heifers, respondent testified that the agreed number of heifers weighed approximately 600 pounds each and that heifers had a value of $57 per hundredweight. We find the value of the heifers to be $20,520.

In his brief at page 20, respondent lists the liabilities which he must assume under the dissolution decree as a total of $481,539.42. In that amount he includes a credit of $1,300 for "Credit for Assets of Respondent on date of marriage"—some 27 years before the trial. We specifically reject that amount, and we determine the debts to be paid by respondent are accurate as set out in the trial court's decree: St. Paul National Bank, $322,177.98 (various notes); Equitable Life Insurance, $61,500; Ray Boncynski, $47,760 (remaining amount due on land contract for real estate); and Norwest Leasing Co., $8,595.68 (for center pivots); or a total debt assignment of $440,033.66. These debts are to be paid by respondent, and respondent is ordered to hold petitioner harmless from any obligation on her part arising out of those debts. Subtracting that amount from the property awarded to respondent, the figures show a net value of property to respondent of approximately $191,110.

In making the property award, the court awarded respondent a certificate of deposit in the amount of $100,000. This amount was either loaned or given to respondent by a friend in Texas. The court did not specifically determine the nature of this transaction, but the evidence would suggest it was a gift to respondent, and that amount is not herein considered because it does not constitute marital property, but is the

property of respondent.

We agree with the trial court and do not include additional moneys allegedly made by respondent in hay, milo, and rental proceeds. The hay and milo figures apparently have been incorporated in the livestock-feeding expense figures, and the rental proceeds were too speculative to be considered.

In the particular circumstances of this case, we feel that the property should be divided evenly. The parties had been married for 26 years. Each has worked hard in his or her lifetime. After the dissolution, however, respondent's life goes on much the same. He lives in the same house he has lived in for many years. He has the burden of a large debt, but he has very substantial assets to cope with that debt. He is 51 years old, with many working years ahead of him.

Petitioner, on the other hand, is living in a $140-per-month apartment, driving an older car, working at minimum wages, and starting a new life at age 44, with relatively few assets. Dividing the property in the fashion the trial court did appears to be the only way the situation should be handled. The difference in assets must be handled by awarding an appropriate amount of money to petitioner.

Respondent has net assets totaling $191,110. Petitioner has assets totaling $28,075. The difference is $163,035. Respondent is ordered to pay to petitioner the sum of $81,500. This results in an approximately even split, which, under the particular circumstances of this case, is fair to each party. Such amount should be paid by a $16,300 payment by October 1, 1988, with additional payments of $16,300 to be paid by October 1, 1989, 1990, 1991, and 1992. Respondent shall not pay interest on the unpaid balance except as to any payments which are not timely paid, and on such payments he will pay interest at the rate of 10 percent per year after any payments are overdue.

In connection with the alimony to be awarded to petitioner, we are governed by the provisions of Neb. Rev. Stat. § 42-365 (Reissue 1984), which provides:

> When dissolution of marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a

history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in custody of such party. . . .

While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. . . . The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

We consider first the wage income of respondent, which is approximately $21,000 per year. The parties' income tax return shows that in 1985, the parties also had $18,105 in interest income; $4,084 in business income (resulting from gross trucking income of $32,698 and expenses of $28,614, including $4,628 in depreciation); and $9,272 in capital gain income.

The parties' return showed $52,890 as farm loss. This figure was based on $118,336 of gross income, based on $68,570 net sales of purchased livestock and $41,532 sales of grain and other livestock. This gross income figure was reduced by expenses of $171,226, including $24,216 depreciation. The resulting loss plus a $20,045 loss carried forward required no income tax payment in 1985.

The parties' 1984 and 1983 income tax returns showed similar figures. The only purpose of listing these figures is to show that respondent has been awarded practically all of the income producing assets accumulated by the parties.

As stated in *Gleason v. Gleason*, 218 Neb. 629, 634, 357 N.W.2d 465, 468 (1984):

While the condition of a business is an important consideration in determining the propriety of alimony to be paid, the condition of a spouse's business is not the sole factor in determining proper alimony. Rather, the earning capacity of a spouse operating a business is an element

which is to be considered in determining alimony.

In addition, respondent has $100,000 of his own not to be considered marital assets. The substantial expenses he is incurring are ultimately going to redound to his benefit. Petitioner has nothing awarded on which to earn money, except her insurance policies and the property award hereunder.

Equitable consideration requires that petitioner not have to live like the proverbial church mouse while her ex-partner daily drives around his extensive holdings and observes his assets grow.

Accordingly, respondent is to pay petitioner the sum of $750 per month alimony for a period of 4 years from the date of the decree herein on August 29, 1986. Credits will be allowed on such sums for any maintenance payments made to petitioner by respondent since August 29, 1986. In addition, respondent shall pay to petitioner the sum of $2,400 per year beginning at the conclusion of the 4-year period set out above. The payments are subject to termination when petitioner reaches age 62, is married, or dies.

Respondent shall also pay the sum of $1,000 on the amount owing for services rendered to petitioner by her attorney.

As so modified, the order of the district court is affirmed.

AFFIRMED AS MODIFIED.