PAULA K. HAFER, APPELLANT, V. DOUGLAS L. HAFER, APPELLEE.
524 N.W.2d 65

Filed November 8, 1994.    No. A-93-127.

130

Richard L. Rice, of Kinsey Ridenour Becker & Kistler, for appellant.

Joseph H. Murray, of Germer, Murray & Johnson, and Gregory C. Damman for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.
This is an appeal from a divorce decree dissolving the marriage between appellant, Paula K. Hafer, and appellee, Douglas L. Hafer. The parties were married for approximately 19 years, during which time Paula contracted multiple sclerosis. She is conceded to be unemployable. Because the trial court ordered no alimony, ordered Paula to pay child support, and denied Paula's request to have Douglas pay certain expenses, we modify the trial court's ruling.

## I. FACTUAL BACKGROUND

The facts are essentially without dispute. The parties were married on May 25, 1973. Two children were born of the marriage. The children were 13 and 17 years old at the time of trial and were residing in the family home.

At the time of their marriage, Paula was working as a dental technician. She continued working outside the home during the early years of the marriage. After 1977, she ceased employment outside the home in order to raise the children and to lend support to the family farming operation. Douglas was employed by Geneva Implement at the time of the marriage, and in 1974, he started the family farming operation, which he continues now with his brother.

Dr. Jeffrey Hollis, Paula's physician, testified at trial that Paula was first diagnosed with multiple sclerosis in 1984, although she had previously displayed some symptoms. When asked to opine as to a prognosis, the doctor stated that the disease can cause a variety of neurological impairments which vary from individual to individual. He testified that the illness had caused Paula significant impairment up to the time of trial and that her future scenario included worsening neurological impairments. Of particular note was the doctor's opinion that given the further debilitating effects associated with the disease, Paula would very possibly be required to have someone provide care for her in the future. He stated this was a probable result of multiple sclerosis. He concluded by testifying that he has no reason to believe that she should improve significantly in the future. The record implies, and the briefs confirm, that both sides agree Paula is unemployable because of the disease.

Paula's monthly income and expenses are as follows:

| **Income:** | | | **Expenses:** | | |
|---|---|---|---|---|---|
| Social Security benefits | $ | 422 | Monthly | $ | 875 |
| Medicaid benefits | | 47 | | | |
| Avon sales | | 19 | | | |
| TOTAL | $ | 488 | | | |

Being a farmer, Douglas does not have a definitive yearly

income for the future. However, the tax returns for the 3 years preceding trial indicate a stable income varying by only a few thousand dollars each year.

Douglas' 1991 income and monthly expenses are as follows:

| Income: | | Expenses: | |
|---|---|---|---|
| Adjusted gross income from federal income tax return | $29,369 | Monthly | $1,798 |
| IRA add-back | 2,000 | | |
| TOTAL | $31,369 | | |
| Federal income tax | $ 2,261 | | |
| State tax | 961 | | |
| Self-employment tax | 1,476 | | |
| TOTAL | 4,698 | | |
| Net 1991 income | $26,671 | | |

($ 2,223 average monthly income)

Douglas' 1991 tax return listed depreciation in the amount of $5,784. Douglas' expenses, listed on exhibit 17, reveal expenses of $200 per month for "Clothing purchases (Most is for ball shoes)," $200 per month for uninsured doctor and medical expenses, and $120 per month for "Labor paid to children." We will discuss some of these items later.

Neither of the parties disputes the division of property. While each expectedly valued the property differently, neither side appeals from the determination regarding the division of that property, and we will only discuss it as is necessary when it interfaces with the issues of alimony and nonmarital property. A trust fund was established by Paula, as revealed by the record, but neither party elicited evidence indicating what amounts, if any, are contained in that trust.

During the course of the marriage, Paula received two inheritances totaling $40,000. Paula testified that these moneys were used to build the family home. Douglas contends that he had a $15,000 inheritance which was received as forgiveness of a partnership debt.

Custody of the children was stipulated to by the parties, and it was agreed that Douglas and the children would reside in the family home so that the children would not be forced to change environments.

The court found that the total "net assets" of the parties were $177,940. According to the court's award, Douglas retained the majority of the assets, together with the corresponding liabilities, and is to pay Paula $87,620 as her share of the property, in 300 monthly installments of $564.52, which includes 6 percent annual interest compounded monthly.

Regarding the issue of alimony, the trial judge stated on the trial docket sheet:

> My first instinct was to grant [Paula] alimony for the rest of her life, i.e., to require [Douglas] to pay all of [Paula's] necessary and reasonable expenses. Ihave [sic] backed off because I believe that alimony would lead to periodic expense and bitter personalities in the end. Therefore, I have attempted to evenly divide those things that the parties have accumulated over this long marriage andto [sic] enable each to say that he or she did their part.

Douglas was not ordered to pay alimony.

The trial docket sheet also addressed the issue of child support. The judge's note states,

> To enable her to maintain her dignity and in an attempt to conform to the support guidelines, [Paula] is ordered to pay child support in the amount of $ 100 each month until there is only one child not of age, not emancipated or living and then $ 75 each month until both children are of age, are emancipated or deceased . . . .

Douglas was ordered to pay the costs of the action plus $500 of Paula's attorney fees. Paula had requested that appraisal expenses she incurred be assessed against Douglas, but the court declined to do so. A motion for new trial was filed and denied. This timely appeal followed.

## II. ASSIGNMENTS OF ERROR

Paula has assigned four errors. She contends that the district court erred in (1) failing to award her alimony, (2) ordering her to pay child support, (3) failing to properly offset her

inheritance, and (4) not awarding her the expense for appraisals of property.

### III. STANDARD OF REVIEW

■ In appeals involving actions for dissolution of marriage, an appellate court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. When the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Larimore v. Larimore*, 240 Neb. 13, 480 N.W.2d 192 (1992); *Policky v. Policky*, 239 Neb. 1032, 479 N.W.2d 795 (1992).

■ A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. See, *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992).

### IV. DISCUSSION

#### 1. ALIMONY

■ Paula claims that she is entitled to an award of alimony under Neb. Rev. Stat. § 42-365 (Reissue 1993), which states:

> When dissolution of marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .

While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately.

The Nebraska Supreme Court has repeatedly stated, "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in § 42-365 make it appropriate." *Murrell v. Murrell*, 232 Neb. 247, 252, 440 N.W.2d 237, 241 (1989).

This case involves a marriage of long duration. Each party has made contributions to the marriage. Douglas has occupied the more traditional husband's role of principal income earner. Paula contributed her outside income during her years of employment and then contributed substantially to the care and education of the children, thus surrendering any personal career opportunities.

Paula's inability to engage in gainful employment is obvious and extreme. Diagnosed with multiple sclerosis in 1984, she can now move about only with the aid of a walker. Both parties concede that she is unemployable. Paula's income is also undisputed as being $488 per month, while her unreimbursed expenses total $875. The trial exhibit listing her expenses illustrates the dire straits her finances are in. Of the $875 in monthly expenses, $310 is spent providing rent and insurance. With obvious conservatism, she lists her monthly food expenses at $100. Douglas, on the other hand, has listed expenses totaling almost $1,800. The figure appears somewhat inflated by the entries for "Clothing purchases (Most is for ball shoes)" and "Labor paid to children" which total $320 per month.

When a marriage of pronounced duration is linked with a significant difference in income or earning capacity between the parties, an award of alimony is appropriate. See *Wenger v. Wenger*, 200 Neb. 446, 263 N.W.2d 855 (1978). It is particularly appropriate in the present case because the income-producing assets of the parties were distributed exclusively to Douglas. The Nebraska Supreme Court has stated that not only is the earning capacity of the spouse to be considered in determining if alimony is appropriate, but also the fact that one of the

parties has received all of the income-producing property from the marriage. See *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988). In *Ritz*, the Supreme Court noted that the "[p]etitioner has nothing awarded on which to earn money, except her insurance policies and the property award hereunder." *Id.* at 867, 429 N.W.2d at 711. Paula's situation is nearly identical to the *Ritz* situation in this regard. The *Ritz* court went on to state, "Equitable consideration requires that petitioner not have to live like the proverbial church mouse while her ex-partner daily drives around his extensive holdings and observes his assets grow." *Id.* The same is true in the instant case.

■ We are aware of the Supreme Court's ruling in *Cole v. Cole*, 208 Neb. 562, 567, 304 N.W.2d 398, 401 (1981), wherein the court stated, with regard to alimony, "requiring the husband to pay a fixed sum for an indefinite period of time is not favored, although we have on occasion upheld such awards where we deem them necessary." We are guided also by language from *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982). In *Pyke*, the Supreme Court noted that the Nebraska Legislature in 1980 amended § 42-365 and added a new paragraph which illuminated the Legislature's intent in adopting this section. The amendment in part provides that " '[t]he purpose of alimony is to provide for the *continued maintenance* or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.' " 212 Neb. at 118, 321 N.W.2d at 909. The court went on to state that the Legislature made it clear by this language that "in the first instance," *id.*, a court should look at the overall circumstances of the parties and attempt to provide for the award of alimony for a period of time and under such conditions as would minimize disruption in the lives of the parties caused by the divorce. The court noted that this should not be interpreted to stand for the proposition that in every instance one of the spouses should be granted a lifetime annuity; it was simply stating that a court in every situation must make an examination of the circumstances and attempt to enter an order which is fair and equitable.

In the case before us, the trial court's language is ambiguous

at best with regard to alimony. To iterate, the court stated, "My first instinct was to grant [Paula] alimony for the rest of her life, i.e., to require [Douglas] to pay all of [Paula's] necessary and reasonable expenses. Ihave [sic] backed off because I believe that alimony would lead to periodic expense and bitter personalities in the end." Periodic expense and bitter personalities are not criteria upon which to award or deny alimony. Given our de novo standard of review, we find that alimony should be awarded. Therefore, we modify the decree of dissolution to provide that Douglas pay Paula $300 per month until the death of either party. This award of alimony is not to terminate automatically upon the remarriage of the petitioner. This alimony may be modified upon a change of circumstances to be considered by the trial court at some future date, together with any other relevant circumstances. It should be noted that this language regarding the term and payment of alimony is similar to that approved by the Nebraska Supreme Court in *Pyke, supra.*

## 2. CHILD SUPPORT

Paula claims that she should not have been ordered to pay child support in the amount of $100 per month, to be reduced to $75 per month upon the older child's reaching the age of majority. The Nebraska Supreme Court has held that the ultimate test in determining the appropriateness of an award of child support is reasonableness as determined by the facts of each particular case and that the trial court's determination will normally be affirmed in the absence of an abuse of discretion. *Helms v. Helms,* 234 Neb. 630, 452 N.W.2d 269 (1990). The record reveals that the children were placed in the custody of Douglas due to Paula's disability and by the agreement of the parties. The trial judge's reasons for ordering Paula to pay support were "to enable her to maintain her dignity and in an attempt to conform to the support guidelines." The record contains a sheet of paper with handwritten notes and figures, which we interpret to be the trial judge's calculation of child support according to the guidelines, given the income of the parties as determined at trial. Neb. Rev. Stat. § 42-364.16 (Reissue 1993) provides:

> The Supreme Court shall provide by court rule, as a *rebuttable presumption*, guidelines for the establishment of all child support obligations. Child support shall be established in accordance with such guidelines unless the court finds that one or both parties have produced *sufficient evidence to rebut* the presumption that the application of the guidelines will result in a fair and equitable child support order.

(Emphasis supplied.) While child support payments should be set according to the guidelines, a trial court may deviate from these whenever application of them would be unjust or inappropriate. *Phelps v. Phelps*, 239 Neb. 618, 477 N.W.2d 552 (1991). We find that given the respective incomes and expenses of the parties and the other surrounding circumstances, no child support shall be ordered in this case at this time. Therefore, we modify the decree of dissolution to eliminate the child support obligation of Paula.

### 3. NONMARITAL PROPERTY

Paula argues that the trial court failed to offset her $40,000 inheritance when making its property division. It is difficult to determine the manner in which the trial court treated the undisputed $40,000 inheritance of Paula. A filing entitled "Journal Entry and Decree of Dissolution of Marriage" is found in the record. Paragraph 12 of the findings states:

> The Court finds that the accumulations made by the parties over their marriage should be divided evenly. The total value of the net assets of the parties is $177,940.00 and [Douglas] should be awarded all of the assets and liabilities except [Paula's] bank account, the Lincoln automobile, [Paula's] life insurance policy, [Paula's] individual retirement account, the personal property now in [Paula's] possession, and the debt due the Geneva State Bank by [Paula] which was incurred after the separation of the parties. In lieu of a further division of property, [Douglas] should pay to [Paula] the sum of $87,620.00 in monthly payments of $564.52, beginning February 1, 1993, and due the first of each month thereafter for 300 months. . . . *The Court has considered the inheritances*

*received by each party and the property in possession of
each to effect an equal distribution.*

(Emphasis supplied.)

The trial docket sheet also addresses this subject matter.
Paragraphs 2 and 3 state:

2. That the total value of the parties' net assets is
$ 177,940 and that [Douglas] is awarded all the assets and
liabilities except [Paula's] bank account (1380), her
Lincoln auto, her insurance policy (cv 2,770), her IRA
(7,200), all personal property now in her possession and
the debt to the Geneva State Bank which was incurred
after the parties' separation;

3. In lieu of a further division of property, [Douglas]
shall pay [Paula] $ 87,620 in monthly payments of
$ 564.52, beginning February 1, 1993, for 300 months (6%
compounded monthly); *(inheritances and property in
possession effect 50-50 distribution)*[.]

(Emphasis supplied.)

The term "net assets" does not have a universal definition,
nor does the trial judge explain what he means by this term. In
the context of this case, this phrase might mean the total assets
of the parties minus any liabilities, or total assets of the parties
minus liabilities plus or minus adjustments made for
inheritance. A statement in the decree or in the judge's notes
would have proven helpful to this court in deciphering the
effect that the trial judge gave to the $40,000 inheritance of
Paula.

In *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325
N.W.2d 832, 834 (1982), the Nebraska Supreme Court held:

"How property, inherited by a party during the marriage,
will be considered in determining division of property or
award of alimony must depend upon the facts of the
particular case and the equities involved." . . . [P]roperty
acquired by one of the parties through gift or inheritance
ordinarily is set off to the individual receiving the
inheritance or gift and is not considered a part of the
marital estate. [Citations omitted.] An exception to the
rule is where both of the spouses have contributed to the
improvement or operation of the property which one of

the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

The difficulty this court has in analyzing the trial court's decision is the vagueness and ambiguity in the record. As we mentioned above, the definition of net assets is uncertain. The decree and judge's notes would appear at first blush to be dividing the property of the parties in a nearly 50-50 fashion. However, parenthetical comments made in the judge's notes clearly indicate that the property division was tempered by other factors. The first is mentioned above where the trial court states that "inheritances and property in possession effect 50-50 distribution." It is unclear how any property inherited was factored into the division of property. A second example comes from the trial court's docket sheet stating that Douglas "shall pay the costs herein, including $ 500 towards [Paula's] attorney fees (*the balance having been considered in the property division*)." (Emphasis supplied.) Again, exactly how this was factored in the property division is unknown. Lastly, another remark in the judge's notes when he was addressing the issue of alimony states:

Although a divorce is necessary, no one can find fault in this case. It just has to be. My first instinct was to grant [Paula] alimony for the rest of her life, i.e., to require [Douglas] to pay all of [Paula's] necessary and reasonable expenses. Ihave [sic] backed off because I believe that alimony would lead to periodic expense and bitter personalities in the end. *Therefore, I have attempted to evenly divide those things that the parties have accumulated over this long marriage andto* [sic] *enable each to say that he or she did their part.*

(Emphasis supplied.) This remark would seem to indicate the property was divided evenly, but the issue of inheritance was not addressed.

Being mindful of the language in *Van Newkirk* and the cases that have been decided since then, we find several factors critical. These factors include that both spouses have

apparently contributed to the improvement or operation of the family home. The record would indicate that while Paula invested her $40,000 worth of inheritances into the family home, there was also an "SBA" loan from which Douglas took $22,000 and invested in building the home. Another salient fact is that the Hafer family, Douglas' family, contributed labor to the construction of the home. Lastly, it would seem reasonable to conclude that given the preceding investments, the value of the home would exceed $62,000. However, Paula's own appraisal introduced into evidence at trial indicates that the present value of the home is only $44,000. It would be a harsh result indeed to award her the entire value of the house. Given these factors and the fact that the trial judge apparently awarded Paula approximately 50 percent interest in the home, we do not find the trial judge abused his discretion in dividing the property.

## 4. APPRAISAL COSTS

At trial, Paula introduced evidence showing that she spent $950 to obtain a real estate appraisal. In order to pay this debt, she obtained a loan from the Geneva State Bank. She requested that the trial court order her husband to pay for this expense, as well as attorney fees and court costs. She had been billed $4,234.89 for attorney fees, and there is reference in the record to court costs being $1,221. The trial court ruled that Douglas was required to pay $500 for attorney fees and to pay court costs, but was not obligated to pay the real estate appraisal. The allowance of attorney fees and costs in a dissolution of marriage case is discretionary with the trial court and depends upon a review of all the facts and circumstances presented. If there is no abuse of discretion, the decision of the trial court should be affirmed. *Schmer v. Schmer*, 211 Neb. 414, 318 N.W.2d 876 (1982). The allowance, amount, and allocation of a guardian ad litem fee is also a matter within the initial discretion of the trial court, necessarily involves consideration of the equities and circumstances of each particular case, and will only be set aside on appeal when there appears to be an abuse of discretion by the trial court. *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986). The request for

payment of the appraisal expense is controlled by the two above propositions of law, and we therefore apply the standard of review mentioned above.

In *Smith, supra*, the Supreme Court stated that in determining these questions, a court should consider a variety of factors, including the amount of property divided and alimony granted, earning capacity of the parties, and general equities of each situation. In *Smith*, the wife was ordered to pay $240 of an $840 guardian ad litem fee. She appealed from that order. The Supreme Court noted that the wife had received a suitable property division, including an award of the family residence and an equal share in a $63,000 joint bank account. Her husband was employed by the Department of Roads and earned approximately $20,000 per year, while the wife earned money delivering phone books, which yielded an annual income of approximately $3,000. While the court found in that case that the trial court did not abuse its discretion, we find the facts of the instant case to be distinguishable. The disparity in earning capacity between Douglas and Paula is vast. She has no earning capacity, whereas his is in the range of $30,000 per year. Further, unlike the *Smith* case, Paula was not awarded an equal share in a $63,000 joint bank account which she could immediately tap to pay for monthly living expenses as well as expenses associated with the divorce, such as this appraisal. While Paula does not appeal the award of attorney fees in the amount of $500 from this contested divorce, we note that she has a substantial attorney fee to pay. We find that the equities of the situation require that Douglas pay the real estate appraisal fee.

## V. CONCLUSION

We modify the decree of dissolution to eliminate the obligation of Paula to pay child support, to order that Douglas pay alimony in the amount and on the terms contained herein, and to order that Douglas pay the appraisal expense. We find no error regarding the offset of Paula's inheritance, and we affirm that portion of the decree.

AFFIRMED AS MODIFIED.