WENDY L. SMITH, APPELLEE, v. STEVEN R. SMITH, APPELLANT.
623 N.W. 2d 705

Filed February 27, 2001.   No. A-00-061.

Chris A. Johnson, of Conway, Pauley & Johnson, P.C., for appellant.

Thomas G. Lieske, of Lieske & Kristensen, for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

INBODY, Judge.

## INTRODUCTION

Steven R. Smith appeals the judgment of the district court for Kearney County dissolving his marriage to Wendy L. Smith. Steven appeals the issues of custody, admission of the guardian ad litem's reports into evidence, property division, guardian ad litem fees, and attorney fees. For the reasons recited herein, we affirm as modified.

## FACTS

Steven and Wendy were married on June 26, 1987. One child was born of the marriage: Jordan, born August 28, 1987.

On July 5, 1995, Wendy filed a petition for dissolution of the parties' marriage. On September 6, Wendy filed a motion requesting that the court appoint a guardian ad litem. On September 28, the district court granted her motion, appointed a guardian ad litem, and further ordered both parties to deposit $250 in the district court toward the payment of guardian ad litem fees.

Trial in this matter was heard on August 20, October 22, and December 2, 1998, in the Kearney County District Court before Judge Bernard Sprague, and the following evidence was adduced.

Wendy testified that she was Jordan's primary caregiver throughout the parties' marriage and that she attended all of his parent-teacher conferences, coached his athletic teams, and cared for him on a daily basis. Wendy further testified that during the

parties' marriage, Steven rarely attended Jordan's activities. Wendy testified that Steven typically acted more like a friend to Jordan rather than a parent. Wendy testified that she believed it was important for Jordan to have frequent visitations with Steven, that she had encouraged the visitation, and that she had been flexible with the visitation schedule. Wendy further testified that if she was given permanent custody of Jordan that she would continue to encourage the visitation; however, she feared that if Steven was awarded custody that he would not reciprocate. The evidence reflected that while in Wendy's temporary custody, Jordan had thrived and continued to do well in school.

The evidence also reflected that in January 1997, Wendy was admitted to the hospital for a 3-day stay and psychiatric evaluation. Wendy was diagnosed with manic depressive bipolar disorder which was related to sexual abuse she suffered as an adolescent and anxiety she was suffering as a result of the parties' divorce and custody dispute. Since her hospital stay, Wendy had been participating in individual counseling.

Steven testified that he believed it was in Jordan's best interests that he be awarded custody because he could provide a more stable homelife and be available when Jordan needed him. Steven further testified that he had a very close relationship with Jordan, that he spoke to him nearly every day on the telephone, and that they did a lot of activities together. Steven also described an incident in which Jordan was allegedly left home alone early one morning and had called Steven because he was frightened and was unaware that Wendy had left for work early. Finally, Steven testified that he had a stable job, that he had family in the area, and that he was better suited to provide for Jordan.

Dr. John Meidlinger, a court-appointed clinical psychologist, testified that he conducted evaluations of the parties for the purpose of rendering an opinion regarding custody and visitation. Meidlinger testified that he conducted two separate interviews with the parties, conducted a third interview with the parties and Jordan, and also consulted with the parties' own psychologists. Meidlinger testified that in his opinion, both parties were capable of caring for Jordan and performing the role of the custodial parent. However, he believed that it was in Jordan's best interests that Wendy be given permanent custody because she was

the primary caregiver throughout the parties' marriage and Jordan had thrived in Wendy's temporary custody. Meidlinger further testified that Wendy was a consistent caregiver and that she set reasonable expectations for Jordan. Wendy also ensured that Jordan was doing well in school.

Meidlinger further testified that he was aware that Wendy had sought psychiatric treatment following his initial interviews. Meidlinger testified that he also conducted a followup interview with the parties and had reviewed Wendy's medical records. In his opinion, he believed that Wendy had made a good recovery. With regard to Steven, Meidlinger testified that there was evidence that Steven had problems letting go of his relationship with Wendy, that he was somewhat controlling, and that he had problems with anger and loss of temper. Meidlinger testified that Steven had a tendency to overemphasize the friendship aspect of his relationship with Jordan rather than the importance of day-to-day responsibilities. However, Meidlinger testified that it was apparent that Steven had a good relationship with Jordan and that he would be a good parent and could competently care for Jordan.

Alana Anderson, the court-appointed guardian ad litem, also testified, and her reports were admitted into evidence over Steven's objection.

On March 9, 1999, prior to rendering a decision in the instant case, Judge Sprague died. The parties thereafter stipulated that the case would be submitted on the record to Judge Stephen Illingworth. The case was submitted to Judge Illingworth, following hearings on September 15 and October 20.

On January 13, 2000, Judge Illingworth entered an order dissolving the marriage. The court, inter alia, granted custody of Jordan to Wendy subject to Steven's reasonable right of visitation, divided the marital property, ordered Steven to pay the balance of the guardian ad litem fees, and denied both parties' requests for attorney fees. Steven timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Steven alleges that the district court erred in (1) admitting over objection the guardian ad litem's reports into evidence, (2) granting Wendy custody of Jordan, (3) including

$4,500 from the value of the family home in the marital estate, (4) ordering Steven to pay the balance of the guardian ad litem fees, and (5) ordering that each party pay his or her own attorney fees.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial court. *Kellner v. Kellner*, 8 Neb. App. 316, 593 N.W.2d 1 (1999); *Kricsfeld v. Kricsfeld*, 8 Neb. App. 1, 588 N.W.2d 210 (1999); *Halouska v. Halouska*, 7 Neb. App. 730, 585 N.W.2d 490 (1998). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Halouska v. Halouska, supra*.

## ANALYSIS

### Guardian ad Litem Testimony and Reports

First, Steven contends that the district court erred in admitting over objection the guardian ad litem's testimony and reports because they contained hearsay.

A court, under its inherent equitable powers, may appoint a guardian ad litem. A guardian ad litem may or may not be an attorney. The guardian ad litem's duties are to investigate the facts and learn where the welfare of his or her ward lies and to report these facts to the appointing court. These reports to the court, whether in written form or testimony by the guardian ad litem, including hearsay, shall be subject to the Nebraska rules of evidence. *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998).

The presumption is that a trial court considers only such evidence as is competent and relevant. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). We find nothing in the record or the order to overcome this presumption. Furthermore, it has long been held that upon a de novo review in an appellate court, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over

proper objections by the adverse party, will be disregarded. *Stecker v. Stecker*, 197 Neb. 164, 247 N.W.2d 622 (1976). Assuming without deciding that some of the guardian ad litem's testimony and reports may contain evidence which is inadmissible, we will disregard such evidence in our de novo review of the record. Therefore, this assigned error is without merit.

## Custody

■ Next, Steven contends that the district court erred in awarding custody of Jordan to Wendy. In an original divorce action, determinations as to custody in dissolution proceedings are reviewed de novo on the record, but such determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of that discretion. *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998); *Palmer v. Palmer*, 249 Neb. 814, 545 N.W.2d 751 (1996). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Halouska v. Halouska, supra.*

■ When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Davidson v. Davidson, supra*; *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990). Pursuant to Neb. Rev. Stat. § 42-364(2) (Reissue 1998), a court's consideration of the best interests of a minor child shall include, but not be limited to, the following:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision,

abuse and family or household member shall have the meanings prescribed in section 42-903.

Additionally, a court may consider other factors in determining a child's best interests in custody matters, including the moral fitness of the child's parents and the parents' sexual conduct. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996); *Hassenstab v. Hassenstab*, 6 Neb. App. 13, 570 N.W.2d 368 (1997).

Based upon our de novo review of the record, we conclude that Steven and Wendy are both fit and proper persons for custody purposes. The evidence reflects that they both maintain a loving and caring relationship with Jordan and are actively involved in his life. As to Jordan's best interests, it appears that Jordan has good relationships with both parties and that both parties can provide a suitable home for him. Although both parties have acted as caregivers since the parties' separation, the evidence establishes that Wendy was the primary caregiver for Jordan during the parties' marriage and that while in Wendy's temporary custody, Jordan has thrived, been well cared for, and continued to do well in school.

Furthermore, the record reflects that Wendy has encouraged and supported Jordan's relationship with Steven and has been very flexible with regard to the visitation Steven exercises with Jordan. It also appears that Wendy has worked diligently to address her mental problems related to being a victim of past abuse and that Steven has worked to address his alcoholism and anger management. Based on the evidence, we cannot say that the district court abused its discretion in concluding that it was in Jordan's best interests that Wendy be awarded custody. There is ample evidence in the record to support the district court's decision that Wendy should be awarded custody of Jordan.

### PREMARITAL PROPERTY

Steven also contends that the district court erred by including $4,500 of the value of the family home in the marital estate because the marital residence was his separate premarital property. In the decree of dissolution, the district court determined that $15,000 of the value of the family home was Steven's separate property, but that the remaining $4,500 was

marital property that should be included in the division of the marital estate.

As a general rule, the marital estate includes only property accumulated and acquired during the marriage through the joint efforts of the parties. See, *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998); *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). Property owned by a party at the time of marriage is not marital property. See *Lord v. Lord*, 213 Neb. 557, 330 N.W.2d 492 (1983). With respect to separate property, whether inherited, gifted, or premarital, if it can be identified, it is typically set off to the inheriting spouse, the spouse donee of the gift, or the spouse who brought the property into the marriage. See, *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997); *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982). An exception to the rule applies where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or the spouse not owning the property prior to the marriage has significantly cared for the property during the marriage. *Tyler v. Tyler, supra.*

Our de novo review of the record reflects that Steven purchased the family home for $10,000 prior to the parties' marriage, that he spent an additional $5,000 of his premarital funds to make improvements to the residence, and that at the time of trial, the family home had a value of $19,500. There is no evidence in the record that Wendy made any contributions or improvements to the family home as required by *Tyler*. Accordingly, we find that the district court abused its discretion by including $4,500 of the value of the family home in the marital estate, as this was clearly Steven's premarital property.

### GUARDIAN AD LITEM FEE

Next, Steven contends that the district court erred in ordering him to pay the balance of the guardian ad litem fee.

The allowance, amount, and allocation of a guardian ad litem fee is a matter within the initial discretion of a trial court, involves consideration of the equities and circumstances of each particular case, and will only be set aside on appeal when there

appears to be an abuse of discretion by the trial court. *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986); *Hafer v. Hafer,* 3 Neb. App. 129, 524 N.W.2d 65 (1994).

As previously discussed in this opinion, the district court determined that $4,500 of the value of the family home should be included in the marital estate. The court then specifically ordered that "[Steven] will not be required to reimburse [Wendy] for any of that as he will be required to pay the balance of the Guardian Ad Litem fee to equalize [Wendy's] share of the home equity." Thus, it is clear from our review of the record that the district court intended Wendy to be responsible for the payment of the balance of the guardian ad litem fee, as it was to be paid from Wendy's share of the marital estate. Since Wendy, not Steven, is responsible for the balance of the guardian ad litem fee, Steven's contention that the court erred in ordering him to pay the fee is clearly without merit.

However, for the sake of completeness, we note that generally before guardian ad litem fees may be assessed as costs, a party is entitled to notice and an opportunity to be heard. See *Brackhan v. Brackhan*, 3 Neb. App. 143, 524 N.W.2d 74 (1994).

Wendy has not filed a cross-appeal in this matter and does not argue that it was an abuse of discretion for the district court to order the payment of the guardian ad litem fees in this case. Further, Wendy argues in her brief:

> The Guardian Ad Litem in this case spent considerable time in performing her duties. In doing so she submitted regular statements to the Court . . . .
>
> Unfortunately, no exhibit was offered during the trial which is in the record which sets out what her fees are. However, court costs are what they are and they are assigned to one of the parties in the discretion of the Court.
>
> The Court should be allowed to review the Court file to determine what the costs may be in any particular case. . . .
>
> The award of GAL fees in this matter is correct and should be affirmed by this Court.

Brief for appellee at 30-31.

Based upon our de novo review of the record and taking into consideration the division of the marital estate, we cannot say that the district court abused its discretion in ordering the pay-

ment of the guardian ad litem fees from Wendy's share of the marital estate. Therefore, we modify the decree to reflect that Wendy is ordered to pay the balance of the guardian ad litem fee in the amount of $2,487.41.

### ATTORNEY FEES

Finally, Steven contends that the district court erred in failing to award him reasonable attorney fees. In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Shockley v. Shockley,* 251 Neb. 896, 560 N.W.2d 777 (1997).

The dissolution decree reflects that the district court determined that each party should be responsible for his or her own attorney fees because both parties were responsible for the prolonged and expensive litigation in the instant case. Having conducted a de novo review of the record, we cannot say the district court erred in ordering each party to be responsible for his or her own attorney fees. Therefore, this assigned error is without merit.

### CONCLUSION

The district court did not abuse its discretion in granting Wendy custody of Jordan and refusing to award Steven attorney fees. However, we find that the district court abused its discretion by including $4,500 of the value of the family home in the marital estate because it was Steven's premarital property, and we modify the court's order in that respect. We further modify the decree to reflect that Wendy is ordered to pay the guardian ad litem fees in the amount of $2,487.41.

AFFIRMED AS MODIFIED.

CARLSON, Judge, concurs in the result.