## MARY JANE RITCHEY, APPELLEE AND CROSS-APPELLANT, V. MARVIN RAY RITCHEY, APPELLANT AND CROSS-APPELLEE.

302 N.W.2d 372

Filed February 20, 1981. No. 43211.

Vestecka, Gorham & Tegtmeier for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott for appellee.

Heard before KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and HENDRIX and KNAPP, District Judges.

HASTINGS, J.

Marvin Ray Ritchey has appealed from an order of the District Court for Lancaster County dissolving the marriage of the parties and awarding custody of their minor child to the mother, Mary Jane Ritchey. The overlapping assignments of error are substantially as follows: (1) The court erred in failing to compel the petitioner to answer 33 interrogatories and sustained her objections on fifth amendment grounds, and the court erred in refusing to accept the interrogatories and objections into evidence; (2) The court erred in failing to find that the petitioner's relationship

with another man adversely affected the minor child; and (3) The evidence is not sufficient to support the finding that it is in the best interests of the child that he remain in the custody of the mother.

The petitioner, Mary Jane Ritchey, has cross-appealed, assigning as error: (1) The court erred in awarding the respondent 2 months' visitation each year during the summer months; and (2) The court erred in failing to allow the petitioner attorney fees and court costs. We affirm.

The parties were married on August 21, 1971, and had one child, Dean Edward Ritchey, born June 30, 1977. Both parties are employed by Burlington Northern, and both earn between $900 and $1,000 per month; Marvin as a brakeman and Mary Jane as a stenographer. Mary Jane's work hours are 7:30 to 4 p.m., Monday through Friday, and Marvin's hours fluctuate, but are normally 2:30 p.m. to 10:30 p.m., or 4 p.m. to midnight, with Sunday and Monday off. There is ample evidence showing that both parents are fit to have the care and custody of the child. A court-ordered custody investigation undertaken by the juvenile probation office concluded that either parent is fit to have the custody of the child, and no recommendation was made in favor of either one.

The main thrust of the appeal concerns what the appellant terms the moral fitness of Mary Jane. Most of the testimony and evidence concerned certain alleged actions on the part of Mary Jane which, according to the appellant, indicates that the father adheres to higher moral standards than does the mother. Specifically, when the couple separated and Mary Jane and their son, Dean, moved out of the home of the parties, Marvin undertook a full-scale monitoring of all activities of Mary Jane and her alleged paramour. Marvin, two male friends, and one hired private investigator watched her home day and night, followed her in cars, and communicated among themselves on their citizens band radios. Marvin went

so far as to have Mary Jane's garbage picked up and made available to him for his examination. He also took photographs of the interior of Mary Jane's home, including her laundry basket, her bedroom, and her dressing table. There was no indication in the record as to how Marvin gained access to the home on the date those pictures were taken, nor whether he had permission to do so.

The first assignment of error refers to 33 interrogatories which were served on Mary Jane prior to trial, all dealing with her relationship with her alleged paramour. Mary Jane objected to the interrogatories, based on the fifth amendment and Neb. Const. art. 1, § 12. One interrogatory was objected to as privileged. The trial court sustained the objections to the interrogatories. However, when the case was tried, Mary Jane was questioned on direct examination regarding her relationship with the particular man involved. The court commented that any privilege had been waived at that point and the respondent could cross-examine Mary Jane on nearly anything involving her relationship with that man.

The trial court's initial ruling permitting Mary Jane to invoke the privilege against self-incrimination was supported by Neb. Rev. Stat. § 25-1210 (Reissue 1979). Whether the sanction of dismissal of the action could have been invoked within the rule stated in *Schrad v. Schrad*, 186 Neb. 462, 183 N.W.2d 922 (1971), we need not consider because the respondent did not make such a motion at that time. We would observe in passing, however, that *Schrad* was decided on the basis of the "clean hands" doctrine, under the fault concept of divorce actions then existing. Respondent's motion to dismiss was not made until the close of petitioner's case, which was after the trial court had ruled that Mary Jane had waived any privilege and that Marvin's attorney was free to cross-examine her regarding her alleged extramarital activities. The court's refusal to admit the written inter-

rogatories and the petitioner's written objection into evidence was proper, since they had no relevance. There is no merit to the appellant's first assignment of error.

The second error assigned is that the court erred in failing to find that the petitioner's relationship with another man adversely affected the minor child. Mary Jane denied that her relationship with the "other man" was anything more than a friendship. However, assuming the man was her paramour, and there was sufficient evidence that the trial court could have come to that conclusion, that does not automatically make Mary Jane an unfit mother. In *Fisher v. Fisher*, 185 Neb. 469, 176 N.W.2d 667 (1970), we held that where a wife has been guilty of adultery, the court will give consideration to the nature of the act and the circumstances, its probable effects on the future welfare of the children, and the best interests of the children under all the circumstances of the case. We have also stated: "The fact that one of the parties to an action for the dissolution of marriage has committed adultery, although a relevant consideration, will not necessarily be determinative of who shall be awarded custody of the minor children of those parties." *Lockard v. Lockard*, 193 Neb. 400, 402-03, 227 N.W.2d 581, 583 (1975).

Sexual misconduct is only one of the factors which may be properly considered in determining the best interests of minor children. *Kringel v. Kringel*, 207 Neb. 241, 298 N.W.2d 150 (1980). Other factors are "general considerations of the moral fitness of the parents; . . . the emotional relationships between the children and their parents; and the age, sex, and health of the children . . . ." *Kringel* at 244, 298 N.W.2d at 153.

We review an award of custody de novo. However, the determination of the trial court will not ordinarily be disturbed on appeal unless there is a clear abuse of discretion or it is clearly against the weight of the

evidence. *Batenhorst v. Batenhorst*, 205 Neb. 601, 288 N.W.2d 740 (1980). We recognize that it is the trial court which saw the witnesses and observed the attitude of the parties at trial. Considering the youth of the child, the working hours of the parties, as well as the evidence that both parents are fit to have custody, we cannot say that the trial court abused its discretion in awarding custody to the mother. This is particularly true since there was no showing that any sexual misconduct on the part of Mary Jane has adversely affected the child, nor will have an adverse effect on him in the future. We therefore find that appellant's second and third assignments of error do not merit reversal.

The errors assigned by Mary Jane on cross-appeal involve, first, the question of whether 2 months of visitation per summer with Marvin is excessive. This was part of the extensive visitation schedule which basically included: (a) The father has visitation one weekend each month; (b) On weeks of no weekend visitation, the father has visitation 1 full day and ½ day per week; and on weeks with weekend visitation, the father has only the ½-day visitation; (c) The father has the child 1 week each Christmas holiday, alternating Christmas Day each year with the mother; the party not having visitation on Christmas Day will have visitation on Christmas Eve; (d) The father has visitation for up to 2 months each summer, and during those summer months the mother has the same visitation as granted the father in (a) and (b); and (e) The parties are to have reasonable visitation on birthdays and other holidays, to be worked out between the parties themselves.

"In a post-divorce custody proceeding a determination of what constitutes reasonable visitation rights, or periodic possession of minor children, lies within the discretion of the trial court. On appeal we will not disturb the determination except to remedy abuse of discretion." *Lueders v. Lueders*, 187 Neb. 539, 541, 192 N.W.2d 161, 163 (1971).

It is evident that a great deal of thought and work was put into establishing the visitation schedule, even to the extent of setting the exact hour when visitation is to begin and end. An attorney had been appointed by the court to represent the child in the negotiations for custody and visitation. We will not disturb this visitation schedule, because we find no abuse of discretion in awarding an extended visitation each summer. See *Hermance v. Hermance*, 194 Neb. 720, 235 N.W.2d 231 (1975).

On cross-appeal, Mary Jane further assigns that it was error for the court to fail to allow to petitioner the payment of her attorney fees and court costs. "The award of attorneys' fees and the taxing of costs is discretionary with the District Court." *Badberg v. Badberg*, 193 Neb. 844, 847-48, 229 N.W.2d 552, 555 (1975). There was no abuse of discretion.

The judgment of the District Court is affirmed. Petitioner is allowed $500 for the services of her attorney in this court, and the costs on appeal are taxed to the respondent.

AFFIRMED.