GLENNA JEAN RITCHIE, APPELLANT, V. RAND CECIL RITCHIE,
APPELLEE.
413 N.W.2d 635

Filed October 16, 1987.   No. 85-872.

Patrick A. Brock of Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellant.

Thomas A. Wagoner, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

Glenna Jean Ritchie appeals from the decree of the district court for Hall County, dissolving her marriage with Rand Cecil Ritchie, and claims that alimony decreed and attorney fees awarded are inadequate. We modify the award of alimony and affirm the decree as modified.

Glenna married Rand in 1971. While Rand was enrolled in a premedical program at the University of Nebraska-Lincoln, Glenna enrolled in a course of studies at that university. For approximately 1 year, while the Ritchies attended the university, their major source of income was student loans. After moving to Omaha so Rand could attend medical school, Glenna discontinued her studies to work full time to help support the couple. Although Glenna later resumed her studies, she never completed her college education, due partly to the Ritchies' frequent movements required by Rand's schooling and subsequent medical practice after graduation. While Rand was pursuing his degree, Glenna was the major source of support for the Ritchies, holding several different jobs, mostly at the minimum wage. Rand began his residency in psychiatry in 1976, which took the Ritchies to Portland, Oregon, back to Omaha, and then to Lincoln.

In 1979, Rand completed his residency requirements, and the Ritchies moved to Manhattan Beach, California, where Rand was employed by a medical group as a staff psychiatrist and

earned approximately $46,000 per year. Rand and Glenna moved to Grand Island, Nebraska, in 1980, to allow Rand to establish a private practice in psychiatry. Glenna worked in her husband's office as a receptionist and performed other office duties, but received no specific remuneration for such assistance to Rand in his practice. The Ritchies have no children. At time of trial, Glenna was 33 years of age; Rand was 34.

In 1984, Glenna filed her petition for dissolution of her marriage with Rand. The couple has lived without a budget, has dined out four times a week, and has taken trips to California and Colorado. In addition, Rand has taken several trips to Oregon, Hawaii, Colorado, and Kansas City. Their newly constructed home was completed in May of 1984. Since moving back to Nebraska, Rand has been the sole source of support for Glenna. After separation from Rand, Glenna depended upon temporary support payments from Rand, $60 per week which she earned as a part-time floral designer, and a small amount from other odd jobs, including interior decorating. Glenna expressed her desire to complete her college education for an art degree.

Glenna's monthly expenses are approximately $620. Although Glenna lives in the couple's new house, she does not make any house payments. Eventually, the house will be sold or deeded over to the bank which holds the mortgage on the premises. The outstanding debt on the house is $274,000, and the bank has offered to acquire the house and give Ritchies credit for $200,000, which, as far as the record reflects, may leave a substantial but unspecified deficiency.

Rand testified that he is again living in Manhattan Beach, California, where he is employed as a staff psychiatrist by the same medical group for which he had previously worked. Rand annually earns approximately $59,000 and has personal debts of about $50,000, including student loans, debts owed to members of his family, a loan for a new Jeep, and various credit card debts used for personal and moving expenses. Rand failed to pay temporary support payments to Glenna, and yet repaid part of a loan to his sister and gave a nurse $1,500 to embark on a humanitarian mission in connection with an earthquake in

Mexico.

In its dissolution decree, the district court quieted title to certain personal property in each party's name, including a 1982 Volvo awarded to Glenna and 1959 and 1984 Jeep automobiles awarded to Rand. Rand was ordered to pay the outstanding debts of the parties (which included the deficiency on the house) and to hold Glenna harmless concerning all debts of the parties. Further, Rand was ordered to pay Glenna alimony as follows:

> a. The sum of Six Hundred Dollars ($600.00) per month for a period of Twenty-four (24) months, commencing November 1, 1985, and ending October 1, 1987.
>
> b. The sum of Four Hundred Dollars ($400.00) a month for a period of Twenty-four (24) months, commencing November 1, 1987, and ending October 1, 1989.
>
> c. The sum of Two Hundred Dollars ($200.00) a month, commencing November 1, 1989, and ending October 1, 1990.

The decree also awarded Glenna $1,000 to apply to her attorney fees. Glenna appeals, claiming the alimony and attorney fees awarded are inadequate.

> In an appeal involving actions for dissolution of marriage, the Supreme Court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Gerber v. Gerber*, 225 Neb. 611, 617-18, 407 N.W.2d 497, 502 (1987). See, also, *Gale v. Gale*, 224 Neb. 803, 401 N.W.2d 501 (1987) (alimony award); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986) (alimony award).

"An appropriate award of alimony must turn on reasonableness and the circumstances of each case in light of the factors set forth in Neb. Rev. Stat. § 42-365 (Reissue 1984)." *Gale v. Gale, supra* at 805, 401 N.W.2d at 502. As reflected in

Neb. Rev. Stat. § 42-365 (Reissue 1984), factors affecting the amount of alimony include the duration of the marriage, history of contributions to the marriage by each party, interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment. In addition to the factors set out in § 42-365, the income and earning capacity of each party must also be considered. *Gale v. Gale, supra; Taylor v. Taylor, supra.* Section 42-365 also states in part: "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate."

With the foregoing in mind, we believe the trial court abused its discretion in the alimony awarded to Glenna. Our de novo review of the record reveals that the alimony awarded falls short of fulfilling the purpose and objectives of alimony as set forth in § 42-365. The parties were married 14 years. Glenna interrupted her education and career in order to help support Rand while he obtained his medical degree. Glenna later assisted Rand in establishing his practice in psychiatry and was substantially dependent upon him for support. As a consequence, Glenna's income, earning capacity, and job training are limited, and her employment record consists, for the most part, of jobs that paid minimum wages; for example, Glenna was earning approximately $60 per week at the time of trial from her part-time job as a floral designer. Glenna indicated, however, that she would like to return to school and earn her degree, thereby attempting to resume her career which had been interrupted by marriage. On the other hand, Rand is a psychiatrist with established employment from which he earns $59,000 per year. Although Rand has been ordered to pay the parties' outstanding debts, the record indicates that except for the deficiency expected upon disposition of their house, the debts incurred relate mostly to Rand's own personal expenses or to the advancement of his career.

From the entire record we conclude that the alimony awarded was inadequate and constitutes an abuse of discretion by the district court. Based on the record presented, the alimony award is inadequate to provide for Glenna's continued

maintenance and support, considering the respective economic circumstances of the parties and Glenna's desire to resume her education. Therefore, the district court's judgment and decree is modified, that is, Rand shall pay to Glenna the sum of $600 per month, as alimony, commencing November 1, 1985, with such monthly payments of alimony to continue until October 1, 1990.

Finally, appellant argues that the trial court erred in awarding her an insufficient amount for attorney fees. An award of attorney fees is a matter within the trial court's sound discretion, is reviewed de novo on the record, and will be affirmed on appeal in the absence of abuse of discretion. *Busekist v. Busekist*, 224 Neb. 510, 398 N.W.2d 722 (1987); *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986); *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984); *Ritchey v. Ritchey*, 208 Neb. 100, 302 N.W.2d 372 (1981). The award may depend on a variety of factors, including the nature of the case, the amount of property divided and alimony awarded, the earning capacity of the parties, the services performed and results obtained, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Guggenmos v. Guggenmos, supra; Smith v. Smith, supra*. Considering the nature and circumstances of this case, the award of an attorney fee of $1,000 is not an abuse of discretion and is affirmed.

The decree of the district court is affirmed as modified.

Glenna is awarded the sum of $1,000 for the services of her attorney in this court.

AFFIRMED AS MODIFIED.

GRANT, J., not participating.

COLWELL, D.J., Retired, dissenting.

I respectfully dissent on the issue of alimony. The record reflects respondent's earnings as a psychiatrist; however, his net income and available funds to pay the ordered alimony are speculative, since the amount and due date of some of the debts that he was ordered to pay are unknown, particularly the large prospective deficiency debt due the bank.

The ultimate test in allowing alimony is reasonableness as

determined by the facts in each case. *Gale v. Gale*, 224 Neb. 803, 401 N.W.2d 501 (1987). The fixing of alimony rests in the sound discretion of the trial court, and in the absence of an abuse of discretion, it will not be disturbed on appeal. *Rezac v. Rezac*, 221 Neb. 516, 378 N.W.2d 196 (1985). An abuse of discretion requires that the reasons or rulings of the trial judge be clearly untenable and deprive a party of a substantial right such as to amount to a denial of justice. *Fredericks v. Western Livestock Auction Co.*, 225 Neb. 211, 403 N.W.2d 377 (1987); *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984).

The problem here is not an abuse of discretion in the amount allowed for alimony; rather, it is the absence of clear evidence as to the amount and due dates of the debts necessary for the trial court's consideration to make a reasonable award. The same problem prevents this court from making a considered alimony award.

Considering the evidence or lack of evidence presented to the trial court, it cannot be said that the trial judge abused his discretion in the amount of the alimony award. I would affirm.

CAPORALE, J., joins in this dissent.