IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PENATE V. PENATE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FRANCISCO A. PENATE, JR., APPELLEE,

V.

MANUELLA R. PENATE, NOW KNOWN AS MANUELLA R. PALOMARES, APPELLANT.

Filed June 11, 2024.    No. A-23-452.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed in part as modified, and in part reversed.

Nicholas R. Glasz, of Glasz Law, for appellant.

Audrey A. Rowley, of Rowley Law, L.L.C., for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Manuella R. Penate, now known as Manuella R. Palomares, appeals from the Hall County District Court's order dissolving her marriage to Francisco A. Penate, Jr. She contends that the district court abused its discretion in dividing the parties' marital estate, denying her alimony, awarding the parties joint custody of their children, and denying her request for attorney fees. For the reasons stated herein, we affirm in part as modified, and in part reverse the order of the district court.

- 1 -

## II. STATEMENT OF FACTS

### 1. Background

Manuella and Francisco were married in July 2006 and had three children during the course of their marriage: Arianna Alliyah, born in 2008; Isriella Alyssia, born in 2010; and Everly Jade, born in 2018.

During the marriage, the parties resided in Grand Island, Nebraska. They lived in a home until 2010 after which they rented it out for $625 per month. They then moved to the marital home. After their first child was born, the parties agreed that Manuella would stay home and be the primary caregiver for the children while Francisco worked at his job in the automotive industry.

In 2016, the parties formed an automotive business buying, fixing, and reselling cars. The business initially operated as a limited liability company but was later transitioned to an S-corporation called Island Auto. The parties each had a 50 percent ownership interest in the business. Francisco primarily managed the business including the day-to-day operations, finances, marketing, and taxes. Manuella did not contribute to the business as she was the children's primary caregiver and took care of the home maintenance. In 2020, the parties purchased the "Second Street Property" for $163,000 to serve as a remote business location for Island Auto. The Second Street Property, which was owned jointly by the parties, was used to store extra cars from the business.

During the marriage, the parties had one joint personal checking account and one joint business account and their personal and business expenses were largely intertwined. Many of the marital expenses, including the mortgage payments and utility payments, were paid out of the business account.

After the parties separated in May 2020, Francisco moved out of the marital home. He continued paying the mortgage on the marital home while the parties attended marriage counseling in an attempt to reconcile. After the parties' attempts to reconcile were unsuccessful, Francisco asked for a divorce. Due to financial difficulties in paying the mortgage, Manuella and the children moved out of the marital home and into an apartment.

In February 2021, Francisco filed a complaint for dissolution alleging that the parties' marriage was irretrievably broken and requesting, inter alia, that the court divide the parties' marital property, award the parties joint legal and physical custody of the children, and calculate child support in accordance with an order of joint custody. In her answer and counterclaim, Manuella requested that the court award her sole legal and physical custody of the children subject to Francisco's parenting time, calculate child support in accordance with the guidelines, divide the marital property, award her alimony, and award her attorney fees.

### 2. Temporary Order and Pretrial Hearings

In October 2021, the district court entered a temporary order awarding the parties joint legal custody of the minor children with physical custody awarded to Manuella subject to Francisco's parenting time every other weekend and an overnight visit during the week. Francisco was ordered to pay temporary child support in the amount of $1,307 per month and temporary alimony in the amount of $1,000 per month. The district court further granted Francisco the exclusive use of the marital home and ordered that Manuella return money she withdrew from the parties' joint checking account in October 2021, with the exception of $1,307 for child support for

the month of October, $1,000 for spousal support for the month of October, and $5,000 for temporary expert fees. As of March 16, 2023, Francisco had overpaid $15,993 in temporary child support and $10,000 in temporary alimony.

Prior to trial, the court held numerous pretrial hearings to deal with issues including case progression items, concerns related to obtaining discovery, and difficulty in scheduling mediation. These facts will be discussed in greater detail as needed in the analysis section.

3. TRIAL

The trial was held over 2 days in March and April 2023. Testimony was adduced from witnesses including: the parties; Gary Phillips, Francisco's accountant and tax expert; and Rock Stahla, a real estate appraiser.

(a) Financial Support Following Parties' Separation
and Manuella Rejoining the Workforce

Manuella testified that following the parties' separation, she remained in the marital home with the children, and Francisco continued to help financially support her and the children. Francisco testified that the financial support that he provided to Manuella following the parties' separation included supplying Manuella with two different vehicles from the business. The first vehicle, a Chevrolet Tahoe, was totaled in a car accident after Manuella let her brother drive the vehicle. Insurance issued a $25,030 check to Island Auto. Following the accident, Francisco then provided Manuella with a 2015 Range Rover that Manuella still used at the time of the trial.

Manuella re-entered the workforce in November 2021 and, about 2 months prior to the trial, she accepted a new position as a receptionist working 32 hours per week earning $14 per hour. Also, beginning in January 2023, Manuella received the rental property income of $625 per month. Manuella testified that she wanted to go back to school to become an esthetician.

(b) Parties' Involvement With Children and Coparenting

Manuella testified that following the parties' separation, Francisco visited the children throughout the week and that, following the entry of the temporary order, Francisco exercised his court-ordered parenting time. Both Manuella and Francisco testified that they had regularly been able to agree on additional parenting time and that they had generally been able to communicate, coparent, and make decisions impacting their children.

The parties both testified that they had a good relationship with their children and that their children were healthy and doing well academically. Family members of both Francisco and Manuella individually testified that the parties were able to meet their children's needs, that they engaged with their children, and that they participated regularly in their children's events and activities. Although Manuella testified that Francisco was not very involved with the children during the parties' marriage, she acknowledged that following the parties' separation, Francisco often visited the children in the evenings and engaged in all of his court-ordered parenting time.

(c) Valuation of Business

Phillips, the accountant for Island Auto, testified that he began working with Francisco in 2016. Phillips testified that he helped Francisco transition the business from a limited liability company to an S-corporation and educated Francisco on how to keep the books for the business.

Phillips also completed individual and business tax returns each year for Francisco. Phillips testified to the process of valuing the business and stated that, in valuing Island Auto, he took the business assets and earnings less the business debt. Phillips valued the business at $355,000 as of February 16, 2021. Phillips testified that he was not asked to prepare a value for any other date. Manuella testified that she valued the business at $1,132,247 based on 2021 retained earnings multiplied by 3 years.

(d) Valuation of Marital Home and Rental Property

Stahla completed appraisals of the parties' marital home and the rental property based on two different requested valuation dates: February 16, 2021, and September 6, 2022. The February appraisal valued the marital home at $210,000 and the September appraisal valued it at $248,000. Stahla valued the rental property at $115,000 as of February 16, 2021, and valued it at $128,000 as of September 6, 2022.

4. DISSOLUTION DECREE

In June 2023, the district court entered a decree of dissolution awarding the parties joint legal and physical custody of the children; awarding Manuella final decisionmaking authority; awarding Manuella $717 in monthly child support; denying Manuella's request for alimony; and denying Manuella's request for attorney fees.

Regarding the division of marital property, the district court utilized separate property division worksheets for the business assets and debts and the remaining marital estate. The court found that for marital property, not including Island Auto, Manuella was entitled to an equalization payment of $12,938.16. Regarding the valuation of Island Auto, which the court noted was the most valuable asset of the parties' marital estate, the court found that "the only competent evidence . . . was Phillips' testimony that the business was worth $355,000 on February 16, 2021" and "[s]ince [Francisco] is the business, and the business is [Francisco], the Court awards the business to [Francisco] and allocates the value of the business as of February 26, 2021[,] of $355,000 to [Francisco]." The court further found that "[t]he success, and finances, of the business have been inextricably intertwined with the personal finances of the marital estate" since Island Auto's inception in March 2016. The court further noted that

> The success of Island Auto is uniquely dependent on the presence of [Francisco]. There is no dispute that [Francisco] has been the consistent face of the business in addition to being responsible for the day-to-day operations, finances, marketing, and overall management. [Manuella] agrees that she has not had anything to do with the business and is unaware of its finances. So, while she has contributed to the business by allowing [Francisco] the ability to create and grow his business while she managed the home, her participation in the business has not been entirely equal.

Based upon this determination, the court found that award of 75 percent of Island Auto to Francisco and an award of 25 percent of Island Auto to Manuella constituted an "equitable division of the business-related assets and liabilities." The court found that "a 25% value to the business-related assets and liabilities results in a value of $92,760.77. [Manuella] shall receive the

- 4 -

2015 Range Rover from Island Auto, valued at $49,900, resulting in a remaining difference of $42,860.77."

After combining the $42,860.77 equalization for Island Auto with the $12,938.16 equalization for the remaining marital estate, the court awarded Manuella a total equalization payment of $41,998.93, which was calculated by adding both equalization payments then deducting Francisco's $10,000 overpayment of temporary alimony and the $3,800 expert witness expense prepaid by Francisco. Manuella has timely appealed.

## III. ASSIGNMENTS OF ERROR

Manuella assigns that the district court erred in: (1) inequitably dividing the marital estate; (2) denying her request for alimony; (3) awarding the parties joint legal and physical custody of the children; (4) failing to impute a higher income to Francisco in determining his child support obligation; and (5) failing to award her attorney fees.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

### 1. DIVISION OF MARITAL ESTATE

Manuella assigns that the district court inequitably divided the marital estate. More specifically, she argues that the court erred in valuing Island Auto; classifying the Range Rover as a business asset and failing to include either the insurance check or the Range Rover in the business valuation; dividing the marital business; failing to provide her any of the profits from the business; and decreasing her equalization payment by $10,000 for an overpayment of temporary alimony she received. She contends that these errors resulted in her receiving less than one-third of the marital estate.

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id*. There is no mathematical formula by which property awards can be precisely determined, but as a general rule,

a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

In a marital dissolution action, the equitable division of property is a three-step process. *Id.* The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.*

Here, in dividing the marital estate, the district court utilized separate property division worksheets: one for the general marital property and one for the business. In the district court's general property division, it allocated the following:

| ASSETS | Husband | Wife |
|---|---|---|
| Checking & Saving Accounts | 2,639.35 | 0.00 |
| Automobiles & Other Vehicles | 48,000.00 | 0.00 |
| Real Estate | 248,000.00 | 128,000.00 |
| Sub-Total | 298,369.35 | 128,000.00 |
| LIABILITIES | Husband | Wife |
| Mortgage | 109,123.04 | 0.00 |
| Unsecured Creditors | 38,855.00 | 3,458.00 |
| Sub-Total | 147,978.04 | 3,485.00 |
| NET VALUES (SEPARATE) | 150,391.31 | 124,515.00 |
| NET VALUES (COMBINED) | 274,906.31 | |
| EQUAL DIVISION | 137,453.16 | |
| AMOUNT DUE FROM PLAINTIFF TO DEFENDANT | $12,938.16 | |

In its division table related to the business, the district court awarded:

| ASSETS | Husband | Wife |
|---|---|---|
| Automobiles & Other Vehicles | 0.00 | 49,900.00 |
| Farm; Business Equipment, etc. | 355,000.00 | 0.00 |
| Real Estate | 163,000.00 | 0.00 |
| Sub-Total | 518,000.00 | 49,900.00 |
| LIABILITIES | Husband | Wife |
| Mortgage/Contracts Real Estate | 196,856.92 | 0.00 |
| Sub-Total | 196,856.92 | 0.00 |
| NET VALUE OF BUSINESS (SEPARATE) | 321,143.08 | 49,900.00 |
| NET VALUE OF BUSINESS (COMBINED) | 371,043.08 | |
| 25% VALUATION OF BUSINESS | 92,760.77 | |

| DUE TO DEFENDANT FOR 25% OF BUSINESS VALUE | $42,860.77 |
|---|---|

### (a) Value of Island Auto

Manuella first argues that the court erred in valuing Island Auto.

To determine the value of a closely held corporation, the trial court may consider the nature of the business, the corporation's fixed and liquid assets at the actual or book value, the corporation's net worth, marketability of the shares, past earnings or losses, and future earning capacity. *Bryan v. Bryan,* 222 Neb. 180, 382 N.W.2d 603 (1986); *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997). The method of valuation used for a closely held corporation must have an acceptable basis in fact and principle. *Keim v. Keim,* 228 Neb. 684, 424 N.W.2d 112 (1988); *Bryan v. Bryan, supra; Else v. Else, supra*.

During the trial, Phillips, a tax and accounting expert, testified that Francisco requested a valuation of Island Auto as of February 16, 2021. Phillips testified regarding valuing the business:

> The value of the business we want to take into two major components, and the first one would be what the hard assets are worth. In this particular case, there aren't a lot of hard assets. There's the inventory. There's the cash in the bank. There's the buy here/pay here receivables. Those are the primary things.

> We also have the equipment that was bought, but it was actually bought after the date of the valuation. Does affect the year-end profits. I don't know how far we want to go on that. That's one area.

> The other area is the excess earnings -- could be called goodwill or could be called blue-sky. That's a function of what profit is made over and above a reasonable salary. That is tempered as far as how much of that is of value. Depends on the length of the business and depends how important the owner is to the business. If that person is the face of the business or is the only person, then, of course, that has less of an impact of value then as somebody who is unknown, has ownership changes, and it makes no difference. Those are the two things that come into play, of course, less any debt, of which the debt is primarily -- I think actually is or exclusively or possibly on the inventory, if I recall right.

Phillips further testified that Island Auto's hard assets included vehicle inventory. He stated that the total valuation of the business would take into account the business assets and the earnings minus the debt. Based on a reasonable degree of accounting certainty, Phillips valued the business at $355,000 as of February 16, 2021. Manuella did not provide expert testimony as to the valuation of the business but stated that, in her opinion, the value of Island Auto was $1,132,247, which was three times the business' 2021 retained earnings.

In the instant case, although Manuella testified that she believed that Island Auto's value was $1,132,247, she did not request or offer expert testimony as to Island Auto's value. As such, the district court noted that it had only one expert valuation of the business to contrast with the value attributed to Island Auto by Manuella, which contained no support for being an acceptable basis of value for a business of this type in fact or principle. We find that the court's acceptance of the expert-supported valuation of Island Auto was not an abuse of discretion.

(b) Classification of Range Rover as Business Asset

Manuella next argues that the district court erred in valuing the Range Rover as a business asset rather than a personal asset. She further argues that if the district court did not err in valuing the Range Rover as a business asset, the court erred in failing to include the insurance payout for the Tahoe and/or the value of the Range Rover in the Island Auto's total value.

Here, the testimony showed that Francisco provided Manuella with a 2015 Range Rover from the business. As it relates to the value of the business, Phillips testified that the vehicles owned by Island Auto were included in the business' hard assets, which included inventory. He stated that Island Auto's total valuation would take into account the business assets and the earnings minus the debt.

In dividing the property, the district court stated that

while neither party listed the 2015 Range Rover as an asset, both parties are intending this vehicle to become an asset of [Manuella] through this proceeding. While this vehicle . . . was provided to [Manuella] by [Francisco] by and through Island Auto, it is the intention of the parties that the Court award this vehicle to [Manuella] through this proceeding. As such, the Range Rover is a marital asset of the parties which requires appropriate valuation and allocation on the Property Division Worksheet. [Francisco] testified that he obtained this vehicle at auction, but was unable to testify as to exactly what the auction price was. He was able to testify that the price was definitely higher than the $25,030 insurance check from the Tahoe and opined that he could sell the vehicle on his lot for $49,900. Based upon his training and experience, and a lack of contrary valuation evidence, the Court assigns a value of the Range Rover of $49,900 and awards the vehicle to [Manuella], however, this value will be associated only with the Business-Related Property Division worksheet and not the marital property division worksheet as the Range Rover is an asset of Island Auto, rather than either [Francisco] or [Manuella].

Further, on the district court's balance sheet as it related to the business, the court included the value of the Range Rover in determining the net value of the business which value was then divided between the parties. Although the district court utilized two separate tables to divide the parties' marital property, the value of the Range Rover was included in the marital estate as a business asset. The Range Rover was then awarded to Manuella after the court included the value as an asset on the balance sheet to determine each party's share of the marital business. Based on our review of the evidence presented, we find that the record refutes the claim that the value of the Range Rover was not included in the total value of Island Auto.

(c) Division of Business

Manuella also argues that the district court erred in its division of the business because it did not divide it in proportion to each party's 50 percent interest in the business or consistent with the court's 50/50 division of the rest of the marital estate. She further contends:

The trial court's view is erratically prejudicial against a homemaker and their contributions to a marriage. The trial court seems to believe that [Francisco] would have had the same success if he raised the children, took and picked them up from school, assisted in their homework, cleaned the home, and managed all of their appointments.

Brief for appellant at 18-19.

Under § 42-365, the purpose of a property division is to distribute the marital assets equitably between the parties. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004). In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation, irrespective of how legal title is held. *Id.*

Here, the evidence provided that the parties started Island Auto together with each party owning a 50 percent interest in the business. The record contained uncontroverted evidence that the parties agreed that Manuella would be a stay-at-home parent while Francisco operated Island Auto and that the business would eventually fund the parties' retirement. Nevertheless, in dividing the marital property, the district court awarded Manuella 25 percent of Island Auto's value as of February 16, 2021. As it related to the division of the business, the district court noted Island Auto was the most valuable asset of the parties' marital estate and that the parties' personal and business finances have been intertwined, and that Island Auto's success was "uniquely dependent" on Francisco's presence and that Francisco "has been the consistent face of the business in addition to being responsible for the day-to-day operations, finances, marketing, and overall management." Accordingly, the district court found that an award of 75 percent of Island Auto to Francisco and an award of 25 percent of Island Auto to Manuella constituted an "equitable division of the business-related assets and liabilities." The court found that "a 25% value to the business-related assets and liabilities results in a value of $92,760.77. [Manuella] shall receive the 2015 Range Rover from Island Auto, valued at $49,900, resulting in a remaining difference of $42,860.77."

Although the district court analyzed the division of the business assets and remaining assets separately, all such assets were marital property subject to a final equitable division. And when combining the marital assets, the court calculated the entirety of the marital estate at $645,949.39 while awarding $230,213.93 to Manuella and $415,735.46 to Francisco. As such, Manuella received 35.6 percent of the marital estate and Francisco received 64.4 percent. The disparity relates to the court awarding only 25 percent of Island Auto's value to Manuella; the remaining value of the marital estate was split equally. Manuella argues that the final allocation of the marital estate is inequitable in that an unequal split of the business was not equitably justified.

As the Nebraska Supreme Court has consistently held, "[a]lthough the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case." *Millatmal v. Millatmal*, 272 Neb. 452, 458-59, 723 N.W.2d 79, 86 (2006). In this case, Island Auto comprised over ½ of the value of the entire marital estate and Island Auto was fairly and naturally awarded to Francisco who operated the business. Neither party has objected to the actual division of the assets. Instead, Manuella argues the district court should have required a higher equalization payment to reach an equal division of the parties' marital estate. We agree.

Although the overall value of the marital estate awarded to Manuella reaches the outer limits of the polestar of fairness, the division itself must be based upon fairness and reasonableness as determined by the facts of each case. In this case, the largest marital asset was the business and reducing Manuella's share in the value of that asset profoundly affected the overall division of marital assets.

The district court's rationale for awarding Manuella only 25 percent of Island Auto was based upon Francisco's operation of the business and belief that he should disproportionately benefit from the fruits of his labor. But whereas Fransisco's operation of the business does serve as justification for awarding him the business, we disagree that it should serve as a reason to disproportionately allocate the business' value between Francisco and Manuella. On this record, Franscisco and Manuella agreed to start the business together, to serve as 50/50 owners, and for Francisco to maintain business operations while Manuella took care of the family's children and home. In that regard, the record reads as an agreement between Francisco and Manuella as it related to all functions of raising a family of which income production is only one element. During the approximately 7 years that Francisco was operating the business, Manuella was maintaining the marital home and took on a disproportionate share of raising the parties' children. And the business, which Francisco and Manuella owned together, was to fund their retirement.

Although Francisco will maintain the business following the dissolution, we find it inequitable to award Manuella less than 50 percent of the business' value that was built during the parties' marriage. Accordingly, we find that, on this record, the court abused its discretion in awarding Manuella less than 50 percent of the value of the business and we modify the court's decree to adjust the cash equalization payment in the manner we will summarize later in this opinion.

(d) Failing to Award Profits

Manuella next argues that the district court erred in failing to award her additional profits from the business. Manuella's sole statement in connection with her claim that the district court erred in failing to award profits is that "the trial court did not state that Manuella was entitled to any of Island Auto's profits since the [parties'] separation." Brief for appellant at 19. Manuella's conclusory statement is not supported by any argument or citation to caselaw.

As we noted above, the district court divided the business asset utilizing a valuation date of February 16, 2021, the date of the filing of the complaint for dissolution. As the Nebraska Supreme Court stated in *Radmanesh v. Radmanesh*, 315 Neb. 393, 407, 996 N.W.2d 592, 604 (2023):

> The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided. It is well settled that, generally, the date upon which a marital estate is valued must be rationally related to the property composing the marital estate and the property being divided. We have declined to tie the hands of the district court and mandate that it must use only one particular valuation date in equitably dividing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

Here, Manuella has not assigned error to the district court's date of valuation. And we note that Island Auto's yearly profits were necessarily included in the determination of Island Auto's value as of the February 16, 2021, date of valuation. The remaining assets and debts were awarded and the court was required to assess a fair cash equalization payment in order to better equalize the distribution. Because the profits were included in the value of Island Auto, although we have adjusted the cash equalization payment as it relates to the value of the business, we reject

- 10 -

Manuella's argument that the district court abused its discretion in valuing the business by not including additional profits in its valuation.

Again, Manuella makes the conclusory statement that "[t]he trial court then reduced [the] amount that [Manuella] was entitled to even further and decreased her quarter of the business by the '10,000 overpayment' of alimony allegedly made by [Francisco.]" Brief for appellant at 19. She argues that the net effect of this, and the reduction of her business interest, resulted in her receiving less than ⅓ of the marital estate.

As we explain below, because we find that the district court abused its discretion in failing to award alimony to Manuella, we will adjust the cash equalization payment including this $10,000 credit.

## 2. ALIMONY

Manuella next assigns that the district court erred in failing to award her alimony. She argues that the length of the marriage, the disparity of income, and the testimony that the marriage interrupted her career and education opportunities, favored an award of alimony.

In a dissolution of marriage proceeding, § 42-365 allows a court to order payment of such alimony by one party to the other and division of property as may be reasonable. What constitutes a reasonable alimony award and division of marital property depends on the facts of each case, but to make that determination, a court may consider, among other things, the circumstances of the parties, the duration of the marriage, and the history of the contributions to the marriage by each party, including contributions to the care and education of the children. *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). Section 42-365 further provides:

> While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or a just result. *Knapp v. Knapp*, 32 Neb. App. 669, 4 N.W.3d 415 (2024). The ultimate criterion is one of reasonableness. *Id.* An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id.*

Here, in denying her request for alimony, the district court stated that there was no evidence that Manuella lost any employment or educational opportunities due to the marriage and no evidence that she was detrimentally impacted by her role as a stay-at-home mother while Francisco worked. Further, the court found that since the parties' separation, Manuella had re-entered the workforce and was earning $14 per hour. The district court found that an alimony award would

"serve only as an attempt to equalize" the parties' incomes rather than provide Manuella with additional time to secure her own means of support. More specifically, the court stated:

> In the three years since the separation of the parties, [Francisco] has provided substantial support to [Manuella] in the form of both court-ordered temporary alimony as well as other financial assistance to include the providing of multiple vehicles at no cost. In addition, [Manuella] ceases to be a stay-at-home mother and has re-entered the workforce. In short, [Manuella] has now secured her own means of support.

Although we agree that Manuella has re-entered the workforce, we disagree with the district court's finding that there was no evidence Manuella lost any employment or educational opportunities as a result of the parties' agreement that she would be a stay-at-home parent. To the contrary, the evidence showed that the parties had been married for approximately 15 years at the time of the trial and, during that time, the parties agreed that Francisco would work at their jointly owned business while Manuella would stay at home to raise the parties' children and take care of the household. Manuella testified that she completed high school and that she had an interest in pursuing a college education during the parties' marriage, but Francisco discouraged her because of the increased costs associated with utilizing daycare for the parties' children.

Following the parties' separation, Manuella entered the workforce in November 2021, and at the time of trial was earning $14 per hour working as a receptionist. Although we recognize that, following the October 2021 temporary order, Manuella received temporary alimony of $1,000 per month, including an overpayment of $10,000, as well as temporary child support, permanent child support, and the parties' rental property which generates gross revenue of $625 per month, we disagree that those circumstances do not constitute a basis for an additional alimony award. In so concluding, we find the Nebraska Supreme Court's opinion in *Ritchie v. Ritchie*, 226 Neb. 623, 413 N.W.2d 635 (1987), instructive. In finding that the amount of alimony awarded was an abuse of discretion, the Court held that

> the alimony awarded falls short of fulfilling the purpose and objectives of alimony as set forth in § 42-365. The parties were married 14 years. [The wife] interrupted her education and career in order to help support [the husband] while he obtained his medical degree. [The wife] later assisted [the husband] in establishing his practice in psychiatry and was substantially dependent upon him for support. As a consequence, [the wife's] income, earning capacity, and job training are limited, and her employment record consists, for the most part, of jobs that paid minimum wages; for example, [the wife] was earning approximately $60 per week at the time of trial from her part-time job as a floral designer. [The wife] indicated, however, that she would like to return to school and earn her degree, thereby attempting to resume her career which had been interrupted by marriage. On the other hand, [the husband] is a psychiatrist with established employment from which he earns $59,000 per year. Although [the husband] has been ordered to pay the parties' outstanding debts, the record indicates that except for the deficiency expected upon disposition of their house, the debts incurred relate mostly to [the husband's] own personal expenses or to the advancement of his career.

> From the entire record we conclude that the alimony awarded was inadequate and constitutes an abuse of discretion by the district court. Based on the record presented, the

alimony award is inadequate to provide for [the wife's] continued maintenance and support, considering the respective economic circumstances of the parties and [the wife's] desire to resume her education. Therefore, the district court's judgment and decree is modified, that is, [the husband] shall pay to [the wife] the sum of $600 per month, as alimony, commencing November 1, 1985, with such monthly payments of alimony to continue until October 1, 1990.

*Ritchie v. Ritchie*, 226 Neb. at 626-27, 413 N.W.2d at 637-38. See, also, *Williams v. Williams*, No. A-17-409, 2018 WL 2768956 (Neb. App. June 5, 2018) (selected for posting to court website) (affirming alimony award where 64-year-old wife moved to multiple states with military husband to accommodate his career which prevented her from earning time-related pay increases in any one job or graduating from lower paying job to better paying job).

We reach a similar conclusion here. At the time of the trial, the parties had been married for nearly 16 years and Manuella interrupted her own ability to progress in her own career path to help support Francisco who ran the family business and, in doing so, Manuella became substantially dependent on him for support. As a consequence, Manuella's income-earning capacity and marketable skills are now substantially limited as evidenced by her now entering the workforce with a position which pays her around $14 per hour. Manuella similarly indicated that she would like to obtain training to become an esthetician to increase her earning capacity and that she had forgone obtaining a college degree in order to accommodate Francisco and the children.

In short, from this entire record, we conclude that the district court abused its discretion in failing to award Manuella any alimony. As such, we reverse the court's finding that Manuella's equalization payment should be reduced by Francisco's $10,000 overpayment of temporary alimony and find that Manuella shall be entitled to keep that overpayment as an additional award of alimony as we will summarize in our final calculations later in this opinion.

### 3. CUSTODY

Manuella assigns that the district court erred in awarding the parties joint legal and physical custody of the children. She argues that the court did not analyze the best interests factors and failed to consider the desires and needs of the parties.

Under the Parenting Act adopted by the Nebraska Legislature, the concept of child custody encompasses both "legal custody and physical custody." *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). "Legal custody" focuses entirely on decisionmaking authority and is defined as "the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health." *Id.* When deciding custody issues, the court's paramount concern is the child's best interests. *Kashyap v. Kashyap,* 26 Neb. App. 511, 921 N.W.2d 835 (2018).

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T., supra*. The Parenting

Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. Neb. Rev. Stat. § 43-2392(1) and (3) (Reissue 2016). Here, in awarding custody, the district court found that

> both parties are suitable, supportive, and fit parents. Each party has been involved in the daily lives of the children despite the current proceeding. The best interests of the children require both stability yet routine contact with each parent. Accordingly, neither parenting plan proposed by the parties is in the best interests of the children. Exhibit 79 provides insufficient parenting time for an adequate relationship between [Francisco] and the children while Exhibit 38 provides no stability for the children with the children changing residences on a daily basis during the week.
>
> . . . The parties will have joint legal and physical custody of all three children. In general, the children will spend one week with [Francisco], then the next week with [Manuella.] Holidays will be alternating as outlined in the attached Parenting Plan. The parties should cooperate within reason in making decisions regarding the children. Either parent may make emergency decisions affecting the health or safety of the children while they are in their physical custody. However, if the parties cannot agree on major decisions that will extend past their respective parenting time, [Manuella] will have final decision-making authority.

Here, the district court awarded the parents nearly equal parenting time in the form of an alternating week-on/week-off schedule. Such a schedule requires that the children spend roughly the same amount of time at each parent's residence and allows both parents continuous blocks of parenting time for significant periods.

Further, the evidence presented during the trial showed that the parties generally had a good coparenting relationship, provided each other with necessary information regarding the children, and were able to make changes to the parenting plan without court intervention. Further, both Francisco and Manuella testified to having a good relationship with each of the children. Neither party disputed that Francisco exercised all of his court-ordered parenting time, as well as additional time agreed to by the parties. The two oldest children, who were enrolled in school, did well in their classes and were on the honor roll. Both Francisco and Manuella testified that they attend their oldest daughter's softball games, participate in the parent-teacher conferences, and take the children to medical appointments occurring during their respective parenting time.

Based on our de novo review, in light of the parties' ability to coparent, and each of parent's present fitness and ability to meet the children's individual physical, medical, and mental health needs, we cannot find that the district court erred in its consideration of the best interests factors or in finding that an award of joint custody was in the children's best interests. This assignment fails.

### 4. CHILD SUPPORT

Manuella next assigns that the district court erred in calculating Francisco's income to determine his child support obligation. More specifically she asserts that

In the instant case, equity compels us to disregard the corporate entity, of which [Francisco] made all financial decisions and had complete control, to determine [Francisco's] true income. Testimony was adduced as to the creative rationale of [Francisco] and his accountant to avoid tax liability, and how they set his "income[."] Thus, the measure of [Francisco's] income is driven, in large part, by the profitability of his closely held corporation, Island Auto. The trial court erred by not imputing a higher income to [Francisco] when determining child support.

Brief for appellant at 24.

Under Neb. Ct. R. §4-204 of the Nebraska Child Support Guidelines:

Total monthly income is the income of both parties derived from all sources, except all means-tested public assistance benefits which includes any earned income tax credit and payments received for children of prior marriages. This would include income that could be acquired by the parties through reasonable efforts. For instance, a court may consider as income the retained earnings in a closely-held corporation of which a party is a shareholder if the earnings appear excessive or inappropriate. All income should be annualized and divided by 12. . .

As a general rule, the income of a self-employed person can be determined from his or her income tax return. *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). In *Gangwish v. Gangwish*, 267 Neb. 901, 912, 678 N.W.2d 503, 514 (2004), the Nebraska Supreme Court stated:

. . . we determine that under the appropriate factual circumstances, equity may require a trial court to calculate a party's income by looking through the legal structure of a closely held corporation of which the party is a shareholder. Stated otherwise, equity may demand that a court consider as income the earnings of a closely held corporation of which a party is a shareholder.

Manuella generally argues that the district court should have imputed a higher income, consistent with Island Auto's profitability, because "[i]t is clear that [Francisco] is capable of earning more than he presented at court." Brief for appellant at 24.

During the trial, Francisco testified that his annual salary was $67,000 but he admitted that he received additional income from dividend distributions from Island Auto. As we read Manuella's argument, she appears to suggest that the district court utilized only Francisco's annual salary in calculating his income to determine his child support obligation. However, from our review of the record, the district court calculated Francisco's monthly income at $8,944 which amounts to roughly $107,000 per year. Notably, this calculation was consistent with Manuella's proposed child support calculation offered and received into evidence. The tax returns received into evidence show Francisco's total income for 2019 at $126,000; for 2020 at $103,692; and for 2021 at $116,583. Whereas those tax returns from an S-corporation are reflective of taxable income, they do not directly reflect the amount of Francisco's take-home income. Instead, Francisco's take-home income would be a combination of his salary and dividend distributions from Island Auto on an annual basis. Because the district court calculated income relating to both salary and dividends, and because that calculation is consistent with the income that Manuella

herself proposed, we find no abuse of discretion in the district court's calculation of Francisco's total annual income at approximately $107,000. This assignment fails.

5. ATTORNEY FEES

Manuella finally assigns that the district court erred in failing to award her attorney fees. She argues that the evidence presented did not show that the fees were unreasonable, untenable, or an abuse of discretion. She further argues that "[t]he trial court's apparent dislike for Manuella's attorney being a Lincoln attorney did not give rise to a reasonable disallowance for [attorney] fees." Brief for appellant at 25.

As this court recently stated in *Ewing v. Evans*, 32 Neb. App. 531, 553, 1 N.W.3d 571, 587-88 (2023):

> Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.* Thus, there was authority, in this modification of a dissolution decree case, for the awarding of attorney fees. *Id.* It has been held that in awarding attorney fees, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. See *id.*

In denying her request for attorney fees, the district court found that Manuella's counsel "was the cause of additional delays or unnecessary court proceedings." The court specifically identified that Manuella's counsel waited over a year after Francisco provided his discovery responses before seeking a motion to compel on answers believed to be inadequate and before seeking leave for additional interrogatories. Manuella's counsel also failed to timely file her property statement as required by local court rule § 9-21(B)(6), and ultimately the court had to grant leave for Manuella to file her property statement out of time. Manuella's counsel also left the parties' mediation early, which resulted in the parties' being unable to reach any resolution during mediation. And Manuella's counsel failed to provide Francisco with copies of certain exhibits prior to the morning of trial, and despite receiving $5,000 for temporary expert fees, Manuella utilized Francisco's witness, at a cost of $1,200, to provide a residential appraisal for a separate date. The court found:

> In evaluating the requested fee amount in light of the criteria set forth in *Cornwell*, the Court finds that the attorney fee amount requested by [Manuella] is not reasonable. The Court finds that it would not be equitable in any circumstances to fund the travel of an attorney merely because the adverse party elected to hire an attorney from another jurisdiction and did not negotiate a reduced rate for non-legal services such as travel. The Court finds no evidence that the case required 80+ hours of pretrial expenses, no novel legal issues were addressed, and that $300 per hour is above the customary charge for similar services in a routine dissolution action. Additionally, the Court finds that the

dilatory nature of the pretrial proceedings were due exclusively to the actions of counsel for [Manuella]. These delays unnecessarily prolonged the proceedings, made mediation impossible to be successful, and resulted in excessive [attorney] fees for both parties.

Based on our review of the record, Manuella's request for $24,240 in attorney fees was accompanied by an affidavit drafted by her attorney. The attorney's affidavit detailed that the attorney had provided 80.8 hours of legal services throughout the pendency of the case billed at $300 per hour. The district court found that the fees requested were not reasonable and that Manuella's counsel caused delays which prolonged the proceedings and increased the amount of legal work. Further, the record reflects that there were issues with case progression items, discovery, and mediation during many of the pretrial proceedings. Specifically, during a June 2022 status hearing, Francisco's counsel indicated Manuella had not provided a property statement she had been ordered to provide during an October 2021 temporary hearing and mediation had not yet occurred. This same concern was brought up in August and October 2022. Eventually, the court scheduled mediation for November 2022 and ordered counsel to attend in person. Further, Manuella did not file a property statement until December 2022, which was accompanied by a motion to file the property statement out of time.

In response, Manuella's counsel indicated that they had been unable to timely complete the property statement as a result of Francisco's counsel failing to produce certain discovery responses, including complete answers to interrogatories and supplementation of interrogatory answers. In October 2022, Manuella filed a motion to compel discovery responses and a motion to leave to file additional interrogatories.

Following a hearing on the motions, the district court found that Francisco's interrogatory responses refuted Manuella's claim that the answers were incomplete and found that the answers were not evasive. The district court denied Manuella's motion to compel. As it related to Manuella's request to file additional interrogatories, the court found that the initial request for interrogatories was served on Francisco in September 2021 and were answered and/or objected to the following month. The court further found that the motion for leave to file additional responses was filed in October 2022, over a year following their receipt of the initial responses. As a result, the district court found that Manuella failed to show good cause either for the "extreme significant delay in requesting leave to file additional interrogatories, nor for the specific additional interrogatories sought."

Additionally, following the pretrial, the district court entered an order requiring the completion of discovery by March 17, 2023. On March 22, Francisco filed a motion requesting that the court exclude certain items contained in Manuella's exhibit list from the trial because the items had not been provided despite multiple requests.

Manuella argues that the trial court's apparent dislike and bias towards her out-of-town counsel did not give rise to a disallowance. However, in considering the record, we find that the court did not err in finding that the delays in the proceedings were largely attributable to Manuella and her counsel and that those delays prolonged the trial and unreasonably increased the amount of attorney fees. Accordingly, we find that the district court did not abuse its discretion in denying Manuella's request for attorney fees. See *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019) (attorney fees shall be awarded against party who alleged claim or defense that court determined

was frivolous, interposed any part of action solely for delay or harassment, or unnecessarily expanded proceeding by other improper conduct).

## 6. CALCULATION OF EQUALIZATION PAYMENT

Having determined that the dissolution decree must be modified to award Manuella 50 percent of the value of the business and that her equalization award should not be reduced by Francisco's $10,000 overpayment in temporary alimony, we now determine the amount of the equalization payment due from Francisco to Manuella.

The district court determined that the value of the parties' marital property, excluding the business, was $274,906.01 and the value of Island Auto, including the Range Rover, was $371,043.08. Thus, based upon our determination that Manuella was entitled to 50 percent of the value of Island Auto, or $185,521.54, less $49,900 for the value of the Range Rover, which was a business asset and was awarded to Manuella for the business, Manuella was entitled to an equalization payment of $135,621.54. Manuella is also entitled to a payment of $12,938.16 to equalize the non-business marital estate. In total, Francisco must pay Manuella a equalization payment of $148,559.70 reduced by the $3,800 expert witness expense prepaid by Francisco (but not reduced by the $10,000 overpayment of temporary alimony) for a total of equalization payment of $144,759.70.

In sum, we modify the district court's order by requiring Francisco to pay Manuella $144,759.70 as an equalization payment. This amount shall be paid over the term set forth by the district court, that is, over 42 months accruing interest at 6.9 percent per annum from the date of the filing of the decree.

## VI. CONCLUSION

We have considered and rejected Manuella's assigned errors regarding the award of joint legal and physical custody, failing to impute a higher income to Francisco, and failing to award Manuella attorney fees. However, we reverse the portion of the court's order providing that Manuella's equalization payment by Francisco's overpayment of $10,000 in temporary alimony. We further modify the court's determination regarding the parties' marital assets to grant Manuella 50 percent of the value of the business. Based upon our determinations, Francisco is ordered to pay Manuella an equalization payment of $144,759.70 to be paid over 42 months accruing interest at 6.9 percent per annum from the date of the filing of the decree.

AFFIRMED IN PART AS MODIFIED,
AND IN PART REVERSED.